In the

# United States Court of Appeals

### For the Seventh Circuit

————————

No. 07-2183

MARGARITA DEL ROCIO BORREGO,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

————————

Petition for Review of the Decision
of the Board of Immigration Appeals.
No. A76-285-589

————————

ARGUED JUNE 6, 2008—DECIDED AUGUST 25, 2008

————————

Before MANION, BAUER, and RIPPLE, *Circuit Judges.*

MANION, *Circuit Judge.* Margarita del Rocio Borrego, using the alias Rosa Maciel-Curiel, falsely claimed to be a United States citizen in an attempt to gain entry into the United States in 1997. Borrego's attempt was foiled, and she was barred from entering the United States for a period of five years. Nevertheless, less than four years later Borrego obtained a B-2 visa under her real name and

returned to the United States. Borrego was later discovered and ordered removed again. Borrego petitions this court for review of the Board of Immigration Appeals decision affirming the latter order of removal. We deny her petition for review.

I.

Borrego is a citizen of Mexico. On July 25, 1997, at the Paso del Norte Port of Entry in El Paso, Texas, Borrego attempted to enter the United States by using the alias Rosa Maciel-Curiel and claiming to be a United States citizen. During an interview with an agent of the Immigration and Naturalization Service ("INS"),[1] which was conducted in Spanish, Borrego admitted that she was not a United States citizen and that she knew it was illegal to falsely claim United States citizenship. But Borrego continued to maintain that she was Rosa Maciel-Curiel; she swore under oath that her "true and correct name" was Rosa Maciel-Curiel.

Borrego's fingerprints were taken, and she was then ordered removed. In a document bearing her signature (albeit under the alias Rosa Maciel-Curiel), Borrego was informed that she had been found inadmissible pursuant to § 212(a) of the Immigration and Nationality

---

[1] On March 1, 2003, the INS ceased to exist as an independent agency and the Department of Homeland Security assumed its functions. For the sake of clarity, though, we will refer only to the INS in this opinion.

Act ("INA"), 8 U.S.C. § 1182(a); that she was "prohibited from entering, attempting to enter, or being in the United States for a period of 5 years from the date of [her] departure from the United States"; and that if she wanted to return to the United States before the five-year ban was up, she had to "request and obtain permission from the Attorney General to reapply for admission into the United States . . . prior to commencing [her] travel." In addition, Borrego was personally served with a notice and order of expedited removal, which stated that she was inadmissible under § 212(a)(6)(C)(ii) of the INA, 8 U.S.C. § 1182(a)(6)(C)(ii), because she "falsely represented [herself] to be a citizen of the United States . . . for the purpose of gaining entry into the United States." After receiving that notice, she was removed from the country.

Despite the five-year ban, in January 2001 Borrego applied for a B-2 visa to enter the United States under her own name, Margarita del Rocio Rodelo Reynoso. During the application process, Borrego never informed the United States Consulate in Mexico of the five-year ban on admission. Nor did she seek permission from the Attorney General to reapply for admission. On her visa application (which was in Spanish), Borrego responded "no" to the question asking whether she had ever attempted to enter the United States by means of fraud or false statements. She also answered "no" to another question asking if she had been deported from the United States within the last five years. Thus unaware of her prior history, the consulate issued Borrego a visa on January 2, 2001, and, shortly thereafter, Borrego used the visa for admission into the country.

While in the United States, Borrego married Fernando Borrego, an American citizen. Her husband proceeded to file an application for an adjustment of status on her behalf in May 2003. That application was denied when the INS found out from an FBI fingerprint comparison that Borrego's fingerprints matched those of Maciel-Curiel. Borrego was then placed in removal proceedings. The INS alleged that Borrego was subject to removal pursuant to § 237(a)(1)(A) of the INA, 8 U.S.C. § 1227(a)(1)(A), as an alien who (1) sought to procure admission into the United States by false and fraudulent pretenses; (2) sought admission within five years of the date of a previous removal without obtaining prior consent to reapply for admission from the Attorney General; and (3) falsely represented herself as a United States citizen. The INS also alleged that Borrego was removable under § 237(a)(1)(A) because she had overstayed her visa.

In proceedings before an immigration judge ("IJ"), Borrego challenged the 1997 order of removal. She also sought permission to reapply for admission retroactively under § 212(a)(9)(A)(iii) of the INA, 8 U.S.C. § 1182(a)(9)(A)(iii). In a June 2005 ruling, the IJ first concluded that she lacked jurisdiction to consider Borrego's challenges to the 1997 order of removal because, among other reasons, § 241(a)(5) of the INA, 8 U.S.C. § 1231(a)(5), states that a "prior order of removal . . . is not subject to being reopened or reviewed." Next, the IJ determined that Borrego was removable as charged, finding neither credible nor plausible her assertions that she never falsely claimed United States citizenship and that she

procured her B-2 visa innocently without intending to conceal her prior encounter with the INS. Finally, the IJ held that Borrego was not eligible for either a waiver of inadmissibility or an adjustment of status, and ordered her removed to Mexico.

Borrego appealed the decision of the IJ to the Board of Immigration Appeals. The Board found that the IJ correctly determined that Borrego was inadmissible because she had falsely claimed United States citizenship during her attempted entry in 1997. The Board then held that the IJ properly found that Borrego had failed to establish eligibility for an adjustment of status, since to obtain that relief an alien must be admissible. *See* 8 U.S.C. § 1255(a). The Board also disposed of Borrego's claim that she was eligible for a waiver of inadmissibility under § 212(d)(3) of the INA, 8 U.S.C. § 1182(d)(3), stating that such a waiver cannot be granted retroactively in removal proceedings pursuant to *Matter of Fueyo*, 20 I&N Dec. 84 (BIA 1989). The BIA dismissed Borrego's appeal, and she has filed a petition for review in this court.


II.

The sole issue Borrego presents in her petition for review is whether a waiver pursuant to § 212(d)(3)(A)(ii) of the INA may be granted retroactively. She argues that it can, and that the Board erred in concluding otherwise. If such a waiver can be granted retroactively, then Borrego would be able to seek an adjustment of status.

Borrego's argument that she is eligible for a retroactive waiver turns on an interpretation of § 212(d)(3)(A)(ii) of

the INA. We review de novo questions of law regarding the interpretation of the INA, giving deference to the Board's reasonable interpretation of that Act. *Negrete-Rodriguez v. Mukasey*, 518 F.3d 497, 501 (7th Cir. 2008). In addition, where the Board "affirms, adopts, and supplements" the IJ's decision, we review both the IJ's decision and any additional reasoning of the Board. *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007).

Section 212(d)(3)(A)(ii) states:

> Except as provided in this subsection, an alien . . . who is inadmissible under subsection (a) of this section (other than paragraphs (3)(A)(i)(I), (3)(A)(ii), (3)(A)(iii), (3)(C), and clauses (i) and (ii) of paragraph (3)(E) of such subsection), but who is in possession of appropriate documents or is granted a waiver thereof and is seeking admission, may be admitted into the United States temporarily as a nonimmigrant in the discretion of the Attorney General. The Attorney General shall prescribe conditions, including exaction of such bonds as may be necessary, to control and regulate the admission and return of inadmissible aliens applying for temporary admission under this paragraph.

8 U.S.C. § 1182(d)(3)(A)(ii). In this case, the Board relied on its previous interpretation in *Fueyo*, wherein the Board determined that the above-quoted language foreclosed the granting of retroactive relief. 20 I&N Dec. at 86-87. According to the Board in *Fueyo*, the text of § 212(d)(3)(A)(ii) of the INA does not contemplate a waiver application by someone who has already gained admission to the United States. *See id*. at 87 ("By its very nature, the relief

sought can only confer advance permission for a future entry, and the statute and regulations make no provision for this waiver to be granted retroactively.").

That is an entirely sensible interpretation of § 212(d)(3)(A)(ii). The statute speaks in terms of a waiver applicant who is "seeking admission," not one who is already admitted. Furthermore, the statute's last sentence giving the Attorney General the power to set conditions on admission for those applying for entry demonstrates that the statute's drafters had in mind a waiver applicant who is not yet admitted. Under the clear language of § 212(d)(3)(A)(ii), then, Borrego was not eligible for a waiver because she had already obtained admission.

Our recent holding in *Atunnise v. Mukasey*, 523 F.3d 830 (7th Cir. 2008), which Borrego has called to our attention as supplemental authority, does not suggest a different result. Rather, that decision underscores the distinction between a waiver applicant who is already admitted, and one who is "seeking admission" but has not yet gained entry to the country. Atunnise, the petitioner in that case, was detained upon arriving at O'Hare airport. She had failed to alert the United States Consulate in Nigeria to her inadmissible status due to an ambiguity in the visa application form.[2] The government cited *Fueyo* and argued

---

[2] Atunnise applied for a K-3 visa. The application form for that visa asked the following question:

> Have you ever been refused admission to the U.S., or been the subject of a deportation hearing, or sought to obtain or assist others to obtain a visa, entry into the U.S., or any
> (continued...)

that Atunnise was not eligible for a waiver because she did not apply at the consulate in Nigeria. We rejected that argument and distinguished *Fueyo* on the grounds that the petitioner had not yet been admitted into the country—the same distinction that is dispositive in this case. Indeed, we specifically stated that Atunnise was "not proposing a retroactive grant because by virtue of her detention she has not yet entered the United States. She has been held in limbo at the border for almost two years and is still seeking entry." *Id*. at 838.

In contrast to Atunnise, Borrego is in the country. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). She was admitted pursuant to a B-2 visa. As the IJ noted, the visa was issued only because the consulate did not know about Borrego's inadmissible status. And the reason the consulate did

---

<sup>2</sup> (...continued)

> other U.S. immigration benefit by fraud or willful misrepresentation or other unlawful means? Have you attended a U.S. public elementary school on student (F) status or a public secondary school after November 30, 1996 without reimbursing the school?

Only a "yes" or "no" answer to that question was allowed, and no space was given for an applicant to explain her answer. Although Atunnise had been subjected to expedited removal after attempting to enter the United States with a fraudulent passport, she had never attended a public school in the United States. Atunnise answered "no." *Atunnise*, 523 F.3d at 832-33.

not know was because Borrego had used a false name during her attempted entry in 1997.

That the consulate in Mexico did not know about Borrego's previous attempted entry under a false name highlights another important distinction between this case and *Atunnise*. In *Atunnise*, the onus was on the INS because of the ambiguity in its form. *See* 523 F.3d at 838 ("[T]he government prevented the consular officer in Lagos from discovering that Atunnise needed a waiver because it used an incoherent form to determine her admissibility and then apparently took no steps to cross-check her information through any database."). Here, the burden was reversed: only Borrego knew that she was both Margarita del Rocio Rodelo Reynoso and Rosa Maciel-Curiel. At two different points Borrego had an opportunity to reveal that information and put the ball in the government's court: first during her 1997 interview with the INS, and later when filling out her visa application.

But Borrego let those opportunities go. She chose to falsely maintain under oath during her 1997 interview that her "true and correct name" was Rosa Maciel-Curiel. She also chose to continue her deception on her visa application, responding "no" to the question asking whether she had ever attempted to enter the United States by means of fraud or false statements and to another question asking if she had been deported from the United States within the last five years. Those choices were hers to make. However, we do not possess such liberty of choice. Rather, we are bound by the Board's reasonable

interpretation of § 212(d)(3)(A)(ii) of the INA and must enforce the consequences of Borrego's failure to disclose her inadmissibility and seek a waiver at the proper time.

### III.

Because the plain text of § 212(d)(3)(A)(ii) of the INA speaks only in terms of those seeking admission, the Board did not err in concluding that it cannot operate to waive inadmissibility once an alien is already admitted. We DENY Borrego's petition for review.