In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1011

L.D.G.,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,

*Respondent*.

On Petition for Review of a Final Order of
the Board of Immigration Appeals.

ARGUED OCTOBER 29, 2013 — DECIDED MARCH 12, 2014

Before WOOD, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. This petition for review of a final order of removal is brought by L.D.G., the victim of a serious crime who was also convicted of a more mundane one. When L.D.G. applied for a U Visa in order to forestall her impending removal from the United States, U.S. Citizenship and Immigration Services (USCIS) refused to waive her statutory inadmissibility stemming from her uninspected entry

and prior drug conviction. Facing certain removal, she asked the Immigration Judge (IJ) presiding over her removal proceedings to determine independently whether to waive her inadmissibility. The IJ declined and found that USCIS alone had jurisdiction to provide such a waiver. The Board of Immigration Appeals affirmed. We must now decide whether the IJ correctly declined jurisdiction, or if Congress has created concurrent jurisdiction under which both the Department of Justice and the Department of Homeland Security may grant waivers of inadmissibility to U Visa applicants who qualify for them.

## I

We begin with a bit of background about the labyrinthine statutory structure that lies behind this appeal. Congress created the U Visa as part of the Victims of Trafficking and Violence Protection Act of 2000. See Pub. L. No. 106-386, 114 Stat. 1464 (2000). U Visas allow the victims of certain statutorily designated crimes who have suffered "substantial physical and mental abuse," and who have been or are likely to be helpful to authorities in investigating or prosecuting that crime, to remain in the United States as lawful temporary residents despite being otherwise subject to removal. See 8 U.S.C. §§ 1101(a)(15)(U), 1184(p). The provision is designed to encourage noncitizen crime victims to come forward and help law enforcement investigate and prosecute their victimizers without fear of deportation. See New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53014–15 (Sept. 17, 2007).

U Visas are not automatically granted to qualifying noncitizens. The decision whether to grant a U Visa is statutorily committed to the discretion of the Secretary of Home-

land Security, see 8 U.S.C. § 1101(a)(15)(U), and is exercised through USCIS, an office within the Department of Homeland Security (DHS) and a successor to the now-defunct Immigration and Naturalization Service. The number of U Visas that can be issued annually is capped at 10,000, see 8 U.S.C. § 1184(p)(2)(A), and USCIS has filled that quota every year since it began issuing the visas in 2008. See News Release, U.S. Citizenship & Immigration Services, USCIS Approves 10,000 U Visas for 5th Straight Fiscal Year (Dec. 11, 2013), *available at* http://www.uscis.gov/news/alerts/uscis-approves-10000-u-visas-5th-straight-fiscal-year. The allowance fills quickly: for fiscal year 2014, it was reached in December 2013. *Id.*

Further complications arise for noncitizens who are inadmissible to the United States under 8 U.S.C. § 1182(a) when they apply for a U Visa. At this point, it is important to understand the conceptual difference between inadmissibility and removability. Removability is relatively straightforward: a noncitizen who is eligible for removal is, as the term implies, potentially subject to removal proceedings (once called deportation proceedings for people found within the United States). DHS initiates the removal process. It pursues it as an administrative proceeding within the Executive Office for Immigration Review (EOIR), an arm of the Department of Justice (DOJ). The removal proceeding is first heard by an IJ, with the possibility of appeal to the Board of Immigration Appeals (Board); a petition for review from a final order of removal can be brought to the court of appeals for the circuit in which the IJ's hearing took place, see 8 U.S.C. § 1252(a)(5), (b)(2), unless another statutory provision independently makes the order unreviewable. Inadmissibility is slightly different, although the grounds for removability and

inadmissibility generally overlap for noncitizens who entered without inspection. The statute defines as "inadmissible" the classes of aliens who are ineligible for visas or admission to the United States. See 8 U.S.C. § 1182(a). As a practical matter, an inadmissible alien is not eligible to seek any of a number of statutory "outs" that allow a person to remain lawfully in the United States, such as an adjustment of status to permanent resident under 8 U.S.C. § 1255 or a nonimmigrant visa (of which a U visa is just one example). An inadmissible alien may, however, become eligible for some of these forms of relief if she successfully obtains a waiver of inadmissibility through one of the mechanisms found at 8 U.S.C. § 1182(d).

One section in particular is of interest here; it is always available for potential U Visa applicants in need of a waiver:

> The Secretary of Homeland Security shall determine whether a ground of inadmissibility exists with respect to a nonimmigrant described in section 1101(a)(15)(U) of this title [governing U Visas]. The Secretary of Homeland Security, in the Attorney General's [*sic*] discretion, may waive the application of subsection (a) of this section … in the case of a nonimmigrant described in section 1101(a)(15)(U) of this title, if the Secretary of Homeland Security considers it to be in the public or national interest to do so.

8 U.S.C. § 1182(d)(14). Though the statute mentions the "Attorney General's discretion," this appears to be a codifier's error. Legislation amending the statute in 2006 replaced "Attorney General" with "Secretary of Homeland Security" eve-

rywhere it appeared in this section, and so the persistence of a reference to Attorney General is likely an inadvertent holdover from the original version of the U Visa statute. See Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (Jan. 5, 2006).

When the U Visas were first created, discretion to grant both the visas themselves and section 1182(d)(14) waivers of inadmissibility was vested in the Attorney General. See Victims of Trafficking and Violence Protection Act, 114 Stat. 1464. The passage of the statute, however, predated the creation of the Department of Homeland Security. Primary responsibility for granting and denying both the visas and (d)(14) waivers was transferred to DHS in 2006, before any visas were issued. See Emergency Supplemental Appropriations Act for Defense, The Global War on Terror, and Tsunami Relief, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005) (section 1182(d) waivers); Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (Jan. 5, 2006) (U Visas). DHS regulations regarding the issuance of U Visas were completed in 2007, see 72 Fed. Reg. at 53014, and the first U Visa was issued in 2008, see USCIS News Release, *supra*.

Our description of the mechanics of obtaining a U Visa up to this point is generally uncontested. The plot thickens, however, when one realizes that there is a separate waiver provision in 8 U.S.C. § 1182(d)(3)(A), which reads as follows:

> [A]n alien … who is inadmissible under subsection (a) of this section … but who is in possession of appropriate documents or is granted a waiver thereof and is seeking admission, may

> be admitted to the United States temporarily as a nonimmigrant in the discretion of the Attorney General.

This is the waiver provision that L.D.G. seeks to invoke.

Statutory references to the "Attorney General" include the EOIR (where both the IJs and the Board reside), which is a component of the Department of Justice. *Cf.*, *e.g.*, *In re H-N-*, 22 I. & N. Dec. 1039, 1043 (B.I.A. 1999). We have interpreted section 1182(d)(3)(A) to permit an IJ to waive inadmissibility of a nonimmigrant. See, *e.g.*, *Atunnise v. Mukasey*, 523 F.3d 830, 833 (7th Cir. 2008). L.D.G.'s petition requires us to decide whether the IJ retains that power when a noncitizen seeks waiver of inadmissibility in order to obtain a U Visa, despite the more targeted U Visa waiver provision in section 1182(d)(14). With that background in mind, we are ready to turn to the facts of petitioner's case.

## II

L.D.G. and her husband entered the United States from Mexico without inspection in 1987. They first settled in California, where they built a comfortable life and had four U.S.-citizen children. In 2005, the family moved to Illinois in order to support L.D.G.'s brother-in-law, who was struggling with a drug problem. In January 2006, the family purchased and began to operate a restaurant, which by all accounts did fairly well during its first seven months.

The family members' lives changed dramatically one day in August 2006. A group of armed men entered the restaurant and kidnapped L.D.G. and her family, along with one of the restaurant's employees and a customer. The assailants were looking for L.D.G.'s brother-in-law. When the family

could not provide information about his whereabouts, they were bound and blindfolded, and threatened with death and sexual assault. The hostages were taken to a private residence in another town, where the kidnappers sexually assaulted L.D.G's teenage daughter and severely beat her husband. The family was rescued only when police officers arrived several hours later. L.D.G. and her family assisted police in the subsequent investigation and prosecution of their kidnappers.

The family was too frightened to return to the restaurant business in the wake of these events. Lacking a stable source of income, they fell on hard times. L.D.G.'s husband ultimately made the ill-fated decision to enter the drug trade to support the family, a fact L.D.G. maintains that she learned only when police pulled her over in June 2007 and searched her car for drugs. She later discovered that the police had executed a search warrant on her home that same day and found two kilograms of cocaine in the garage. She and her husband were arrested and charged with possession of a controlled substance with intent to deliver. L.D.G. maintains her innocence to this day, but she accepted a plea deal carrying a sentence of probation and time served in order to return to her children. Her husband was sentenced to five years in state prison, where he remains incarcerated.

In November 2007, DHS initiated removal proceedings against L.D.G. under 8 U.S.C. § 1182(a)(6)(A)(i), which makes removable a noncitizen present in the United States without having been admitted or paroled. She initially sought and was granted a continuance of her immigration case in order to pursue a U Visa. After receiving her application, USCIS identified additional reasons why she should be

found inadmissible: her conviction of a crime involving moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(I); her conviction of a controlled substance crime, *id.* § 1182(a)(2)(A)(i)(II); and her status as a person who "the Attorney General knows or has reason to believe … is or has been an illicit trafficker in any controlled substance," *id.* § 1182(a)(2)(C). The agency declined to waive her inadmissibility, and without a waiver her U Visa application was denied as a matter of course. USCIS reopened and reconsidered the waiver matter in May 2010 on L.D.G.'s motion, but it again denied the waiver that September. L.D.G. then filed an administrative appeal (within DHS) of the decision, which was available to her under the statute in place at the time; that appeal is still pending.

Meanwhile, L.D.G.'s immigration proceedings—which were continued four times while she pursued the waiver from USCIS—resumed in the immigration court after USCIS issued its final denial in September 2010. Her removal hearing took place on March 30, 2011. There she conceded that she was removable and ineligible for cancellation of that removal. See 8 U.S.C. § 1229b. She urged the IJ, however, to consider anew her application for a waiver of inadmissibility so that she could continue her pursuit of a U Visa. She argued that the IJ had independent and concurrent jurisdiction to grant such a waiver under 8 U.S.C. § 1182(d)(3)(A), and that such jurisdiction was unaffected by USCIS's recent denial of her waiver application under section 1182(d)(14). She also clarified that she was not asking for a direct review of her U Visa application itself, but only the waiver application.

The IJ found that he lacked jurisdiction to grant this relief. He looked first to the DHS regulations governing U Visas, in particular 8 C.F.R. § 214.14(c)(1), which states, "USCIS

has sole jurisdiction over all petitions for U nonimmigrant status." He also noted that the regulation establishing USCIS's procedure for handling waiver applications, 8 C.F.R. § 212.17, placed the granting of waivers within USCIS's discretion. See *id.* § 212.17(b). He concluded that the Illegal Immigration Reform and Immigrant Responsibilities Act of September 30, 1996, "specifically eliminate[d] the Immigration Court jurisdiction over non-immigrant admissions and aliens seeking Section 212(d)(3) [8 U.S.C. § 1182(d)(3)] waivers."

The Board adopted the IJ's reasoning and affirmed on appeal. It found the matter controlled by 8 C.F.R. § 212.17, which it read as "specify[ing] that a waiver in conjunction with a U visa is exclusively within the jurisdiction of the Department of Homeland Security." Believing that L.D.G. was applying for a retroactive waiver because it was her illegal entry that led to inadmissibility, the Board relied on this court's holding in *Borrego v. Mukasey*, 539 F.3d 689, 693 (7th Cir. 2008), to the effect that a waiver under section 1182(d)(3) cannot be granted retroactively in immigration proceedings. Noting that L.D.G. was not denied an initial opportunity to seek a waiver under section 1182(d)(14) from USCIS, the Board concluded that the IJ was without jurisdiction and dismissed the appeal. L.D.G. then filed this timely petition for review. See 8 U.S.C. § 1252.

### III

Though we do not have jurisdiction to review discretionary decisions of the Attorney General or the Secretary of Homeland Security, 8 U.S.C. § 1252(a)(2)(B)(ii), we do have jurisdiction over questions of law raised in a petition for review, see *id.* § 1252(a)(2)(D). We review *de novo* the Board's

legal conclusions, as well as those of the IJ insofar as the Board adopted them. *Kiorkis v. Holder*, 634 F.3d 924, 928 (7th Cir. 2011).

Before turning to the main event, we must take care of a preliminary matter: the Board's impression that L.D.G. was pursuing a retroactive waiver under section 1182(d)(3). That is not correct. The relief she seeks is entirely forward-looking. The comparison to *Borrego* is therefore inapposite, although contrasting the cases is useful for illustrating the Board's error. In *Borrego*, the petitioner on an earlier occasion had been caught using a fake name at the border while attempting to enter the United States, and as a result she was barred from entering the country for five years. 539 F.3d at 689–90. Despite the bar, she successfully obtained a B-2 (tourist) visa in her own name less than four years later. When she was found out and put in removal proceedings, she sought a retroactive waiver under section 1182(d)(3)(A) in order to seek an adjustment of status. *Id.* at 691. Her B-2 visa was facially invalid; it could be revived only if her inadmissibility was waived *retroactively*, which would have made her eligible to receive the visa four years earlier.

L.D.G.'s situation is quite different. Unlike the petitioner in *Borrego*, L.D.G. does not yet have a visa. She seeks waiver of her grounds for inadmissibility only to gain eligibility for a U Visa in the future. Waivers of inadmissibility necessarily relieve applicants of the effects of past conduct, but this does not make the waivers themselves retroactive. A waiver is retroactive when it works to salvage relief previously granted for which the applicant was not qualified, and thus was void from the outset. L.D.G., by contrast, has not obtained any relief at all. She is seeking a waiver of inadmissibility in

order to qualify for a new U Visa. *Borrego* presents no barrier to the IJ's providing this relief.

With that settled, we turn to the central question presented: whether the IJ had jurisdiction to consider a waiver under section 1182(d)(3)(A).

**IV**

For all of the complexities of immigration statutes, the decisions of the immigration courts are administrative decisions, and the government suggests our analysis would be aided by applying well-settled administrative law principles. The government sees this as an appropriate case for the considerable deference owed to agencies' interpretations of their own regulations called for by *Auer v. Robbins*, 519 U.S. 452, 461 (1997). It argues that the Board's determination that USCIS had exclusive jurisdiction to consider waivers of inadmissibility predicate to U Visas was just an interpretation of the U Visa regulation found at 8 C.F.R. §§ 214.14, 212.17. If the government were correct, the Board's interpretation would be controlling unless it was "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (quoting *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359 (1989)).

But the government's argument slides past some important details, which taken together make the Board's interpretation a poor candidate for *Auer* deference twice over. First, the most basic requirement—that the agency be interpreting its *own* (ambiguous) regulation—is missing here. See *Christopher v. Smithkline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012). Sections 214.14 and 212.17 were promulgated by DHS. The Board is part of DOJ. There is no rule, in *Auer* or

elsewhere, that encourages or compels courts to defer to an agency's interpretation of a *different* agency's regulations, and we decline to invent one here.

Second, even if deference extended to sister agencies, it is due only if an interpretation is not plainly erroneous or inconsistent with the regulation. Interpretations that are flatly at odds with the language of a regulation cannot be followed, because "an agency cannot by regulation contradict a statute, but only supplement it." *Keys v. Barnhart*, 347 F.3d 990, 993 (7th Cir. 2003). Moreover, flat contradiction is not the only way in which an inconsistency can arise. Interpretations can also be objectionable if they unduly restrict the plain language set forth in the regulation, see *Joseph v. Holder*, 579 F.3d 827, 833–34 (7th Cir. 2009), or because the agency's stated position is not in fact an "interpretation" of the regulation at all. The latter is the case here: the regulations at issue (8 C.F.R. §§ 214.14, 212.17) are silent on the question whether USCIS's jurisdiction over waivers of inadmissibility predicate to U Visas is or is not exclusive. The regulations give USCIS sole jurisdiction to provide U Visas themselves, 8 C.F.R. § 214.14(c)(1), but that is neither important here nor a surprise: that exclusivity is mandated by 8 U.S.C. § 1101(a)(15)(U), and is a separate matter from jurisdiction over waivers of inadmissibility. The regulations also establish the procedures by which an applicant must submit a waiver petition, 8 C.F.R. § 212.17, and the requirements for obtaining a visa, 8 C.F.R. § 214.14(c). We have no reason to question the validity of these provisions, but again, they have nothing to do with whether the IJ may grant a waiver of inadmissibility under section 1182(d)(3)(A) that would allow a petitioner to obtain a U Visa. To be consistent with the regulation, an agency's "interpretation" must actually

construe provisions of that regulation; it is not enough to identify a regulation that addresses an associated matter and tack on requirements that are conjured from thin air. Otherwise *Auer* deference would be a means for agencies to accomplish an end-run around notice-and-comment rulemaking by calling their new rules "interpretations" of old ones.

The deference owed to the Board's interpretation of the relevant regulations may be unimportant in any event. Any interpretation would still need to be consistent with the statute. From that point of view, we might consider whether the DHS regulations, as interpreted by the Board, are entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The first question would be whether Congress had unambiguously expressed its intent on the matter. If the answer were yes, that would be the end of things. If it were no, the next question would be whether the agency's construction is a permissible interpretation of the statute. *Id.* at 842–43. We need not pursue this further, however, because DHS has no authority to promulgate a regulation purporting to define the IJ's jurisdiction. More generally, there is nothing in either 8 U.S.C. § 1101(a)(15)(U) or § 1182(d) to suggest Congress intended to delegate to *DHS* the authority to determine which agency is empowered to consider waivers of inadmissibility necessary for different forms of immigration relief. Any attempt to read such a delegation into Congress's silence would fail for want of an intelligible principle to guide the agency's discretion. See, *e.g.*, *Loving v. United States*, 517 U.S. 748, 771 (1996). Accordingly, if DHS has exclusive jurisdiction over waivers of inadmissibility for U Visa applicants, that exclusivity must flow directly from statute, rather than from any regulation DHS has issued.

**V**

We are left, therefore, with a purely legal question: is the authority given to DHS (and exercised by USCIS) in 8 U.S.C. § 1182(d)(14) the exclusive path for waivers of inadmissibility for U Visa applicants? If so, then the case is over, because it is plain that the waiver power in section 1182(d)(14) can be exercised only by DHS. That subsection gives the Secretary of Homeland Security authority to waive most statutory grounds for inadmissibility for U Visa applicants "if the Secretary … considers it to be in the public or national interest to do so." 8 U.S.C. § 1182(d)(14). But the fact that only DHS may grant waivers under section 1182(d)(14) does not tell us whether that provision is the only means by which an applicant can obtain a waiver. Nothing in section 1182(d) says that it is, nor can we find such language elsewhere in the statute.

Instead, we see that the plain language of section 1182(d)(3)(A) grants to the Attorney General authority to waive the inadmissibility of "an alien" applying for a temporary nonimmigrant visa, subject only to explicit exceptions that do not apply here (*e.g.,* espionage, attempted overthrow of the government, potentially serious adverse foreign policy consequences, and participation in genocide). Conspicuously missing from the list of exceptions is the situation now before us. We are not free to write in a limitation on the Attorney General's powers that Congress did not impose. We thus conclude that section 1182(d)(3)(A) permits the Attorney General to waive the inadmissibility of U Visa applicants like L.D.G.

If the Attorney General were divested of that power to waive in U Visa cases, it could only be because section

1182(d)(14) effected a partial implied repeal of his power under subsection (d)(3)(A). Recall that when section 1182(d)(14) was added to the U.S. Code in 2000, it gave all discretion to waive inadmissibility to the Attorney General. The coexistence of the prior version of section 1182(d)(14) with section 1182(d)(3)(A) creates some awkwardness. If we accept that waivers of inadmissibility for U Visa applicants were available under 1182(d)(3)(A) from the start, then we risk calling 1182(d)(14) redundant, which is an outcome we strive to avoid when interpreting statutes. See, *e.g.*, *In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353–54 (7th Cir. 1996). Conversely, if we find that section 1182(d)(14) imposes a restriction on the Attorney General's otherwise facially valid power to grant such waivers under section 1182(d)(3)(A), we would be recognizing a partial implied repeal of the authority granted by the latter section. This creates its own problems, given the presumption against such repeals and the fact that the later statute does not meet the usual requirements for an implied repeal, such as an irreconcilable conflict or an effort to cover the whole of the subject matter of the former statute and act as a clear substitute. See *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009).

Upon closer examination of section 1182(d)(14), we conclude that the redundancy problem is not so stark after all. From the time it was first passed and continuing to the present day, section 1182(d)(14) has given the identified department head (whether the Attorney General or the Secretary of Homeland Security) the discretionary power to waive grounds for inadmissibility found anywhere in the statute "other than paragraph [a](3)(E)." 8 U.S.C. § 1182(d)(14). This power is more expansive than the Attorney General's waiver authority under section 1182(d)(3)(A), which is not available

for aliens inadmissible under paragraphs (a)(3)(A)(i)(I), (a)(3)(A)(ii), (a)(3)(A)(iii), and (a)(3)(C), as well as those inadmissible under (a)(3)(E). Accordingly, subsection (d)(14) was necessary and not redundant insofar as it created an even greater power to grant a waiver of inadmissibility for purposes of a U Visa than was available in the preexisting catch-all provision. Far from repealing section 1182(d)(3)(A), the newer provision was a context-specific enhancement.

The only other way section 1182(d)(14) could preclude the Attorney General from granting a waiver of inadmissibility to a U Visa applicant is if Congress impliedly repealed that power when it amended the statute to transfer discretion to the Secretary of Homeland Security. But this amendment does not provide the basis for a finding of implied repeal. "[A]bsent a clearly expressed congressional intention, … [a]n implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." *Carcieri*, 555 U.S. at 395 (second alteration in original) (internal quotation marks omitted). Here, in the face of silence by Congress, we have two statutory provisions that are capable of coexistence if they are understood to provide dual tracks for a waiver determination. The later-enacted law (1182(d)(14)) does not cover the whole subject matter of the former (1182(d)(3)(A)). In fact, it was originally offered as a supplement; it would be odd now to find it a substitute for the blanket waiver provision. In the absence of a clear indication by Congress to the contrary, we find that section 1182(d)(14) and section 1182(d)(3)(A) waivers can and do coexist, and that the IJ has jurisdiction to grant a waiver of inadmissibility to a U Visa applicant under section 1182(d)(3)(A).

This is the best we can make of an ambiguous statutory scheme. We are encouraged, however, by the fact that there is reason to believe that Congress intended this result. Though petitioner is seeking only a U Visa, many noncitizens placed in removal proceedings will apply for a variety of forms of relief from removal. For example, K-1 and K-2 visas allow the fiancés of U.S. citizens and their children to remain in the United States temporarily in order to marry as planned; K-3 and K-4 visas provide the same right to noncitizen spouses awaiting permanent resident status. See 8 U.S.C. §§ 1184(d), 1184(r). This court has considered and approved the use of waivers of inadmissibility under section 1182(d)(3) by a noncitizen in removal proceedings in order to obtain a K-3 visa. See *Atunnise v. Mukasey*, 523 F.3d 830, 837–38 (7th Cir. 2008). Other avenues of relief from removal, such as Temporary Protected Status under 8 U.S.C. § 1254a or withholding of removal under the Convention Against Torture, see 8 C.F.R. § 208.16(c), also require an otherwise inadmissible noncitizen to obtain a waiver before relief can be granted. See 8 U.S.C. § 1254a(c)(2).

With so many avenues of relief available and all of them requiring waivers of inadmissibility, allowing the IJ to make a global resolution of waiver requests under section 1182(d)(3) offers efficiency advantages over compartmentalizing waiver decisions whenever a statute gives a second agency more targeted waiver authority. Efficiency is no small consideration in an administrative system as backlogged as the U.S. immigration bureaucracy has been. Noncitizens who ultimately were granted relief waited an average of 898 days nationwide for their immigration cases to reach an outcome as of October 2013. See *Wait for Immigration Relief Longest in Nebraska, Oregon, Illinois Courts*,

TRANSACTIONAL RECORDS ACCESS CLEARINGHOUSE (Nov. 12, 2013), http://trac.syr.edu/whatsnew/email.131112.html (last visited Mar. 12, 2014). This number jumps to 1149 days in Illinois, where L.D.G.'s case was heard. *Id.* And the backlog shows no signs of abating; nationally, the average waiting period has increased 37% over the last five years, from 657 days in fiscal year 2009. *Id.*

Two potential scenarios can arise when the IJ is asked to make a global waiver determination under section 1182(d)(3). If the IJ grants a waiver of inadmissibility, the noncitizen can directly seek the relevant relief (such as a nonimmigrant visa) from the appropriate agency without going through whatever waiver process the agency affords. Alternatively, if the IJ denies a waiver, the noncitizen can still seek a waiver from the relevant agency if a statute provides for it. Either way, relatively little time is lost. The IJ will become familiar with the facts necessary to make a waiver determination as part of the adjudication of the overall removal proceeding. Concurrent jurisdiction over U Visa waivers, shared by DOJ and DHS, thus has its advantages for the administration of the immigration system when compared to the possibility of exclusive USCIS jurisdiction. Finally, it is important to recall that in the final analysis, even if a waiver is granted USCIS retains the authority to grant or to deny the U Visa itself.

A procedure under which the applicant obtains a waiver of inadmissibility from one agency in order to obtain a visa from another agency is neither unprecedented nor unique. For example, USCIS is responsible for granting the K-series visas available to noncitizen fiancés and spouses of U.S. citizens, but waivers of inadmissibility in order to obtain these

visas can be granted by the IJ under section 1182(d)(3). See *Atunnise*, 523 F.3d at 836–37. Indeed, we cannot find any provision under which IJs themselves grant visas; a waiver of inadmissibility by an IJ is always used to clear the way for another department to grant the visa. To find the IJ did not have jurisdiction to consider a waiver in the U Visa context under section 1182(d)(3) because the visa itself had to be granted by a different agency would create a needless inconsistency between U Visas and all others.

Our decision today comports with the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). We express no opinion on the merits of petitioner's waiver claim, or the significance of the fact that USCIS has been conducting parallel proceedings that (to our knowledge) have not yet been resolved on appeal. We hold only that the Board was incorrect to hold that the IJ lacked jurisdiction to consider L.D.G's waiver request. We therefore GRANT the petition for review and VACATE the IJ's order of removal. We send petitioner's case back to the IJ with instructions to consider petitioner's waiver request under 8 U.S.C. § 1182(d)(3)(A).