**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1232
_____

SINA SUNDAY,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

Appeal from the Board of Immigration Appeals
(No. A076-564-640)
Immigration Judge:  Hon. Alan A. Vomacka

Argued:  January 19, 2016
_____

Before:  FISHER, CHAGARES, and BARRY, Circuit
Judges.

(Filed:  August 1, 2016)

Keith E. Whitson, Esquire [ARGUED]
Schnader Harrison Segal & Lewis LLP
120 Fifth Avenue, Suite 2700
Pittsburgh, PA 15222

        Counsel for Petitioner

Benjamin C. Mizer, Esquire
Carl McIntyre, Esquire
Andrew Oliveira, Esquire [ARGUED]
Sharon M. Clay, Esquire
Office of Immigration Litigation
Civil Division

U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, D.C. 20044

      Counsel for Respondent

_____

OPINION

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

      Sina Sunday petitions for review of an order removing him from the United States. He unsuccessfully sought a "U visa" to avoid removal. The Board of Immigration Appeals ("BIA") concluded that the immigration judge ("IJ") lacked jurisdiction to consider Sunday's request for a waiver of inadmissibility regarding his U visa application. We agree with the BIA. Sunday also argues that his removal is unconstitutionally disproportionate punishment. Because the Supreme Court has consistently held that removal is not punishment, that argument lacks merit as well. We will deny the petition for review.

I.

      Sunday is a native and citizen of Nigeria who was admitted to the United States in 1995 with permission to remain for a year. He overstayed and, in 2013, received a Notice to Appear charging him as removable for overstaying and for committing certain crimes. An IJ held Sunday was removable based on his overstaying and on a bail jumping conviction.

      To avoid removal, Sunday applied for a U visa from the United States Citizenship and Immigration Service ("USCIS") (part of the Department of Homeland Security ("DHS")). But to obtain a visa, an applicant must be admissible, and Sunday was inadmissible because he lacked a valid passport and because of his bail jumping conviction. Sunday petitioned the USCIS for a waiver of inadmissibility, but the request was denied based on his criminal record. Sunday then applied for a waiver of inadmissibility from an IJ

2

(IJs are part of the Department of Justice ("DOJ")). An IJ determined that she lacked jurisdiction to consider Sunday's request for a waiver. Sunday also argued that his removal was an unconstitutionally disproportionate punishment, but another IJ (who inherited the case after the prior IJ retired) declined to consider that argument, reasoning that IJs should avoid considering "the possible unconstitutionality of the effect of the Immigration Act." Appendix ("App.") 35. Sunday was ordered removed by that IJ.

The BIA affirmed both determinations. As to the waiver of inadmissibility, the BIA reasoned that, per DHS regulation 8 C.F.R. § 103.2(a)(1), every benefit request made to DHS must follow the relevant form instructions. And "[t]he instructions for the Application for Advance Permission to Enter as Nonimmigrant (Form I-192) state . . . that an applicant for U nonimmigrant status, if inadmissible, must file Form I-192 with the USCIS." App. 21. Thus, the BIA concluded, waivers regarding U visas are exclusively within DHS's authority. The BIA added that it previously "held that a waiver of inadmissibility [by an IJ] cannot be granted in deportation, and by analogy, removal proceedings pursuant to [In ]Matter of Fueyo, 20 I. & N. Dec. 84 (BIA 1989)." App. 21. As to Sunday's argument regarding unconstitutional disproportionality, the BIA held that both it and the IJ lacked authority to rule on the issue. Id. Sunday timely petitioned for review.

## II.

The BIA had jurisdiction to hear Sunday's appeal pursuant to 8 C.F.R. § 1003.1(b). We have jurisdiction over Sunday's petition pursuant to 8 U.S.C. § 1252(a). We review legal conclusions of the BIA de novo. Roye v. Attorney Gen. of U.S., 693 F.3d 333, 339 (3d Cir. 2012).

## III.

The questions before us are (1) whether the IJ had jurisdiction to adjudicate Sunday's request for a waiver of inadmissibility and (2) whether Sunday's removal was unconstitutionally excessive punishment. The answer to both questions is no.

3

A.

U visas allow noncitizen victims of certain crimes who have suffered "substantial physical or mental abuse," and who are likely to be helpful in investigating the crime, to remain in the United States as lawful temporary residents. 8 U.S.C. § 1101(a)(15)(U). The decision whether to grant a U visa is statutorily committed to DHS, and exercised through USCIS. Only 10,000 U visas are available annually. 8 U.S.C. § 1184(p)(2)(A).

A noncitizen who seeks a U visa, but who is inadmissible for any number of reasons, must obtain a waiver of inadmissibility in order to become eligible for the visa. 8 C.F.R. § 214.1(a)(3)(i). Sunday is inadmissible due to his lack of a valid passport and his bail jumping conviction. He seeks a waiver. It is undisputed that DHS has the authority to grant a waiver of inadmissibility for the purposes of a U visa application:

> The Secretary of Homeland Security shall determine whether a ground of inadmissibility exists with respect to a nonimmigrant described in section 1101(a)(15)(U) of this title. The Secretary of Homeland Security, in the Attorney General's discretion,[1] may waive the application of subsection (a) of this section [outlining grounds for inadmissibility] . . . in the case of a nonimmigrant described in section 1101(a)(15)(U) of this title, if the Secretary of Homeland Security considers it to be in the public or national interest to do so.

8 U.S.C. § 1182(d)(14). Sunday sought a waiver from USCIS and was rejected.

---

[1] The reference to "Attorney General's discretion" appears to be an error by the codifier. L.D.G. v. Holder, 744 F.3d 1022, 1025 (7th Cir. 2014); see 8 U.S.C. § 1182 n.4.

4

There is also, however, a separate waiver provision in 8 U.S.C. § 1182(d), which concerns not DHS but the Attorney General:

> [A]n alien . . . who is inadmissible under subsection (a) of this section [outlining grounds for inadmissibility] . . . but who is in possession of appropriate documents or is granted a waiver thereof and is seeking admission, may be admitted into the United States temporarily as a nonimmigrant in the discretion of the Attorney General. The Attorney General shall prescribe conditions, including exaction of such bonds as may be necessary, to control and regulate the admission and return of inadmissible aliens applying for temporary admission under this paragraph.

8 U.S.C. § 1182(d)(3)(A)(ii) (often referred to, as we do below, by its corresponding designation in the Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 212, 66 Stat. 163, 187 (1952)).[2] Sunday claims that, under this provision, the Attorney General — and ultimately, through delegation, an IJ — has the authority to issue him a waiver of inadmissibility. We disagree.

Section 212(d)(3)(A)(ii) of the Immigration and Nationality Act gives the Attorney General the discretion to grant a waiver of inadmissibility to aliens who are "seeking admission." "Admission" is defined as the "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Accordingly, the phrase "and is seeking admission" unambiguously indicates that applications for waivers from the Attorney General are limited to those

---

[2] The statutory language at issue in this case was previously located in § 212(d)(3)(B) of the Immigration and Nationality Act. An amendment to the Act in 2005 relocated the provision in its current form to § 212(d)(3)(A)(ii). See Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109-13, § 104, 119 Stat. 231, 309 (2005).

seeking lawful entry. By definition, that group does not include individuals who have already lawfully entered. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). And the succeeding sentence, which gives the Attorney General "the power to set conditions on admission for those applying for entry," also "demonstrates that the statute's drafters had in mind a waiver applicant who is not yet admitted." Borrego v. Mukasey, 539 F.3d 689, 692 (7th Cir. 2008) (adopting this interpretation).

In addition to this statutory circumscription on the scope of § 212(d)(3)(A)(ii) waivers, IJs may only "exercise the powers and duties delegated to them . . . by the Attorney General through regulation." 8 C.F.R. § 1003.10(b). And, as outlined below, DOJ's immigration regulations restrict the IJ's § 212(d)(3)(A)(ii) waiver jurisdiction to instances where a waiver request was first made to a district director (who is part of DHS) prior to an individual's arrival in the United States.

All aliens who arrive at the United States must be inspected by immigration officers for admissibility. 8 U.S.C. §§ 1225(a), (b). Just as with a U visa applicant already in the United States, arriving aliens who are inadmissible must obtain a waiver. DOJ regulation 8 C.F.R. § 1212.4(b) describes the application process for the § 212(d)(3)(A)(ii) waiver provision at issue in this appeal. The regulation is entitled, "Applications for the exercise of discretion under section . . . 212(d)(3)," and provides that an "application for the exercise of discretion under section 212(d)(3)(B)[3] of the

---

[3] It appears that the DOJ immigration regulations have not been updated to reflect the 2005 relocation of the relevant provision from § 212(d)(3)(B) to § 212(d)(3)(A)(ii) of the Immigration and Nationality Act. See supra note 2. The full subsection (b) of the DOJ regulation is as follows:

> (b) Applications under section 212(d)(3)(B). An application for the exercise of discretion under section 212(d)(3)(B) of the Act shall be submitted on Form I–192 to the district director

6

in charge of the applicant's intended port of entry prior to the applicant's arrival in the United States. (For Department of State procedure when a visa is required, see 22 CFR 41.95 and paragraph (a) of this section.) If the application is made because the applicant may be inadmissible due to present or past membership in or affiliation with any Communist or other totalitarian party or organization, there shall be attached to the application a written statement of the history of the applicant's membership or affiliation, including the period of such membership or affiliation, whether the applicant held any office in the organization, and whether his membership or affiliation was voluntary or involuntary. If the applicant alleges that his membership or affiliation was involuntary, the statement shall include the basis for that allegation. When the application is made because the applicant may be inadmissible due to disease, mental or physical defect, or disability of any kind, the application shall describe the disease, defect, or disability. If the purpose of seeking admission to the United States is for treatment, there shall be attached to the application statements in writing to establish that satisfactory treatment cannot be obtained outside the United States; that arrangements have been completed for treatment, and where and from whom treatment will be received; what financial arrangements for payment of expenses incurred in connection with the treatment have been made, and that a bond will be available if required. When the application is made because the applicant may be inadmissible due to the conviction of one or more crimes, the designation of each crime, the date and place of its commission and of the conviction thereof, and the sentence or other judgment of the court shall be stated in the application; in such a case the application shall

Act shall be submitted on Form I–192 to the district director [again, who is part of DHS] in charge of the applicant's intended port of entry prior to the applicant's arrival in the United States." 8 C.F.R. § 1212.4(b) (emphasis added). If an alien's admissibility is not clear, the district director also has the discretion under 8 C.F.R. § 1235.2 to defer inspection to a later date. This latter regulation, entitled, "Parole for deferred inspection," provides that "[r]efusal of a district director . . . to grant an application for the benefits of . . . section 212(d)(3) or (4) of the Act, shall be without prejudice to the

be supplemented by the official record of each conviction, and any other documents relating to commutation of sentence, parole, probation, or pardon. If the application is made at the time of the applicant's arrival to the district director at a port of entry, the applicant shall establish that he was not aware of the ground of inadmissibility and that it could not have been ascertained by the exercise of reasonable diligence, and he shall be in possession of a passport and visa, if required, or have been granted a waiver thereof. The applicant shall be notified of the decision and if the application is denied of the reasons therefor and of his right to appeal to the Board within 15 days after the mailing of the notification of decision in accordance with the Provisions of part 1003 of this chapter. If denied, the denial shall be without prejudice to renewal of the application in the course of proceedings before a special inquiry officer under sections 235 and 236 of the Act and this chapter. When an appeal may not be taken from a decision of a special inquiry officer excluding an alien but the alien has applied for the exercise of discretion under section 212(d)(3)(B) of the Act, the alien may appeal to the Board from a denial of such application in accordance with the provisions of § 236.5(b) of this chapter.

8 C.F.R. § 1212.4(b).

renewal of such application or the authorizing of such admission by the immigration judge without additional fee." 8 C.F.R. § 1235.2(d). Together, these regulations indicate that IJs may only consider those § 212(d)(3)(A)(ii) waiver requests first made to a district director prior to arrival.

Sunday argues that DOJ regulation § 1235.2(d) "in no way limits the authority of [IJs], nor does it even discuss the jurisdiction of [IJs] generally." Sunday Supp. Br. 6. We disagree. The regulation refers to waiver application "renewal" to, and "authorizing" by, the IJ "without additional fee." This language describes consideration by the IJ only after an application has previously been submitted to the district director and the fee paid (or waived).

Even if we determined that the statutory waiver provision or implementing regulations were ambiguous, we would defer to the BIA's similar interpretation. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984); Soltane v. U.S. Dep't of Justice, 381 F.3d 143, 148 (3d Cir. 2004) (citing Auer v. Robbins, 519 U.S. 452 (1997)) (requiring deference to agency interpretations of ambiguous regulations unless interpretation is inconsistent with the regulation). In In Matter of Fueyo, an alien procured admission into the country through fraud and, once discovered, sought a waiver under § 212(d)(3)(B) (which is now § 212(d)(3)(A)(ii), see supra note 2). 20 I. & N. Dec. at 86. The BIA held that a § 212(d)(3)(B) waiver is unavailable to an applicant who "already entered the United States" and is currently in deportation proceedings.[4] Id. "By its very nature, the relief sought can only confer advance permission for a future entry." Id. at 87. Citing the predecessor regulation to the DOJ's current 8 C.F.R. § 1212.4(b),[5] the

---

[4] The process formerly known as "deportation" is now called "removal." Fernandez-Vargas v. Gonzales, 548 U.S. 30, 33 n.1 (2006).

[5] In 2003, after the Fueyo decision, the functions of the Immigration and Naturalization Service were transferred from DOJ to DHS. Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2177-78 (2002). DOJ

9

BIA recognized that "if an application is denied" for future entry, "it may be renewed 'in the course of proceedings before [an immigration judge] under sections 235 and 236 of the Act and this chapter.'"[6] Id. (quoting 8 C.F.R. § 212.4(b)). The BIA has additionally outlined this process as it pertains to § 212(d)(4) waivers, which are also governed by DOJ regulation § 1235.2(d). See Matter of Kazemi, 19 I. & N. Dec. 49, 52 (BIA 1984) (holding that IJs "have jurisdiction to entertain an application for waiver of inadmissibility under section 212(d)(4) of the Act where an alien renews such application before an immigration judge in exclusion proceedings following its initial denial by the [d]istrict [d]irector").

The Court of Appeals for the Seventh Circuit decision upon which Sunday relies, L.D.G. v. Holder, 744 F.3d 1022 (7th Cir. 2014), did not consider DOJ's regulatory scheme. That court previously held that the "clear" statutory language renders ineligible for IJ waivers those aliens who have "already obtained admission." Borrego, 539 F.3d at 692. In Borrego, the waiver applicant had been admitted to the United States based on fraud. Id. at 690. After her fraud was discovered and removal proceedings commenced, the IJ and the BIA determined that she was not eligible for a waiver of inadmissibility under § 212(d)(3)(A)(ii). The Court of Appeals in Borrego agreed, citing Fueyo and acknowledging

retained certain immigration functions, and the applicable regulations were separated into DHS and DOJ counterparts. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9824 (Feb. 28, 2003); Matter of Sesay, 25 I. & N. Dec. 431, 432 n.1 (BIA 2011).

[6] Sections 235 and 236 of the Immigration and Nationality Act dealt with exclusion proceedings. Those provisions have since been deleted from the statute, see Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 302-03, 110 Stat. 3009-546, 3009-579 (1996), and replaced with removal provisions 8 U.S.C. §§ 1225 and 1226, see In re N-B-, 22 I. & N. Dec. 590, 591 n.1 (BIA 1999). The references to §§ 235 and 236 nonetheless remain in both the DHS and DOJ regulations. See 8 C.F.R. §§ 212.4(b), 1212.4(b).

10

that "[t]he statute speaks in terms of a waiver applicant who is 'seeking admission,' not one who is already admitted." Id. at 692.

In L.D.G., however, that court distanced itself from the Borrego holding. L.D.G. entered the United States illegally and was placed in removal proceedings. L.D.G., 744 F.3d at 1026-27. She unsuccessfully pursued a waiver of inadmissibility from USCIS. Id. L.D.G. then turned to the IJ for a waiver, but both the IJ and the BIA concluded — the latter relying on Borrego — that the IJ lacked authority to issue the waiver. Id. at 1027. The Court of Appeals disagreed, reasoning that Borrego sought a waiver of inadmissibility to cure her fraudulent admission retroactively, whereas L.D.G. pursued "forward-looking" relief in the form of a "new U visa," which the court held was permissible. Id. at 1028.

The L.D.G. decision does not alter our conclusion. The Court of Appeals for the Seventh Circuit did not account for the limitations DOJ immigration regulations 8 C.F.R. § 1212.4(b) and § 1235.2(d) place on IJs' waiver authority. We agree with the Borrego holding that § 212(d)(3)(A)(ii) of the Immigration and Nationality Act unambiguously limits the Attorney General's authority to issue waivers of inadmissibility to those aliens "seeking admission." We also conclude that DOJ's immigration regulations further restrict an IJ's § 212(d)(3)(A)(ii) waiver authority to only those instances where the alien has applied to a district director prior to entry.

Sunday was previously admitted into the United States and overstayed. He therefore cannot seek a waiver of inadmissibility from an IJ under § 212(d)(3)(A)(ii). The BIA, therefore, correctly held that it lacked jurisdiction. It is worth reiterating that this result does not deny Sunday the opportunity to obtain a waiver of inadmissibility altogether — his application should be directed to a different government agency, DHS.

11

B.

Sunday also asserts that his removal violates the Eighth Amendment's prohibition on cruel and unusual punishment and the Fifth Amendment's guarantee of due process because removal is an excessive punishment compared to his conduct and the length of his residence in the United States.[7] He argues, under both constitutional provisions, for a proportionality analysis that he ascribes to Supreme Court decisions such as State Farm Mutual Automobile Insurance Company v. Campbell, 538 U.S. 408 (2003). In State Farm, the Court considered three guideposts in order to determine if a civil punitive damages award was unconstitutionally excessive under the Fifth Amendment: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id. at 418.

We need not apply the State Farm test because the Supreme Court has also consistently held that removal is not a punishment for constitutional purposes. Indeed, the Court has indicated that "[t]he purpose of deportation is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws." I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984); see also Ingraham v. Wright, 430 U.S. 651, 668 (1977) ("[T]he Eighth Amendment [is] inapplicable to the deportation of aliens on the ground that 'deportation is not a punishment for crime.'" (quoting Fong Yue Ting v. United States, 149 U.S. 698, 730 (1893))); Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952) ("'[N]or is the deportation a punishment; it is simply a refusal by the government to harbor persons whom it does not want.'" (quoting Bugajewitz v. Adams, 228 U.S. 585, 591

---

[7] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

(1913))). We have cited the <u>Fong Yue Ting</u> decision in concluding that the "argument that [deportation] is cruel and unusual punishment has been resoundingly rejected." <u>Brea-Garcia v. I.N.S.</u>, 531 F.2d 693, 698 (3d Cir. 1976).

Contrary to Sunday's arguments, the Supreme Court has not reversed its longstanding precedents regarding this issue. Sunday points to <u>Trop v. Dulles</u>, 356 U.S. 86, 103 (1958), where the Court held that the Eighth Amendment "forbids Congress to punish by taking away citizenship," as an indication that removal is punishment as well. However, that opinion specifically recognized that "[w]hile deportation is undoubtedly a harsh sanction that has a severe penal effect, this Court has in the past sustained deportation as an exercise of the sovereign's power to determine the conditions upon which an alien may reside in this country." <u>Id.</u> at 98. The Court concluded that its "view of deportation . . . [was] wholly inapplicable to [Trop's] case," which involved denaturalization imposed as a punishment. <u>Id.</u>

Nor did the Supreme Court's reference to the "'penalty'" of removal in <u>Padilla v. Kentucky</u>, 559 U.S. 356, 365 (2010) (quoting <u>Fong Yue Ting</u>, 149 U.S. at 740), in dicta, change the rule. The Court held there that Padilla's attorney should have advised Padilla that pleading guilty to drug distribution would result in removal. <u>Id.</u> at 360. The Court described how removal may be a "penalty," but that "it is not, in a strict sense, a criminal sanction." <u>Id.</u> at 365. As the Court of Appeals for the First Circuit has correctly articulated about the <u>Padilla</u> decision,

> the mere fact that the Court in <u>Padilla</u> held that a criminal defendant must be adequately advised about the immigration consequences of a guilty plea does not similarly indicate that the consequence is a punitive, criminal one that may not be imposed unless it is a proportional sanction relative to the underlying criminal offense.

<u>Hinds v. Lynch</u>, 790 F.3d 259, 266 (1st Cir. 2015).

13

We have held similarly, also post-Padilla. In Eid v. Thompson, 740 F.3d 118, 121 (3d Cir. 2014), Eid underwent removal proceedings and his citizen spouse filed a Petition for Alien Relative, which the BIA denied. Eid challenged the denial under, among other things, the Eighth Amendment, but we concluded that "removal cannot violate the Eighth Amendment because it is not a criminal punishment." Id. at 126. Sunday does not distinguish this case, except to highlight that there was no final removal order at issue in Eid. That, however, is irrelevant. See id. at 125-26 ("Even accepting the Eids' contention that the denial of the Petition would necessarily result in removal, we are unpersuaded [by the Eighth Amendment argument].").

Because both the Supreme Court and this Court have made clear that removal is not a punishment, Sunday's Eighth Amendment claim fails.[8]

Sunday's argument under the Fifth Amendment for "substantive limits on penalties or punishments" like removal, Sunday Br. 37, lacks merit for the same reason. See State Farm, 538 U.S. at 417 (holding that Fifth Amendment limits excessive civil punitive damages awards, which "serve the same purposes as criminal penalties" (emphasis added)). Nor has Sunday cited, and we are not aware of, any case extending the Supreme Court's analysis in State Farm to removal proceedings. That is unsurprising given that due process limitations on punitive damages awards are motivated by the notion "that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574 (1996). Removal, of course, is a binary

---

[8] Other Courts of Appeals agree with our conclusion. See, e.g., Hinds, 790 F.3d at 261 (holding that removal is not punishment and that the Eighth Amendment is inapplicable); Elia v. Gonzales, 431 F.3d 268, 276 (6th Cir. 2005) (same); Cadet v. Bluger, 377 F.3d 1173, 1196 (11th Cir. 2004) (same); Flores-Leon v. I.N.S., 272 F.3d 433, 440 (7th Cir. 2001) (same); Briseno v. I.N.S., 192 F.3d 1320, 1323 (9th Cir. 1999) (same); Santelises v. I.N.S., 491 F.2d 1254, 1255 (2d Cir. 1974) (same).

14

determination — its severity does not vary like that of a damages award. We hold that Sunday's Fifth Amendment rights were not violated.

## IV.

The Immigration and Nationality Act does not grant the Attorney General the authority to issue Sunday a waiver of inadmissibility. Nor does Sunday's removal constitute unconstitutionally disproportionate punishment. We will deny Sunday's petition.