## MATTER OF FRANCOIS

### In Deportation Proceedings

### A-20200819

*Decided by Board December 15, 1975*

(1) Correspondence from the Department of State pertaining to a persecution claim relative to respondent's application for asylum is properly admissible in evidence in deportation proceedings in connection with his application for withholding of deportation under section 243 (h) of the Immigration and Nationality Act, as amended.

(2) Since Article 33 of the United Nations Convention of 1951 Relating to the Status of Refugees does not require that the refugee's presence in the contracting state be "lawful," respondent who has been found deportable on an entry without inspection charge under section 241(a)(2) of the Act, is not precluded from applying for any relief under the Convention because of his unlawful presence in the United States.

(3) Respondent's section 243(h) application is denied for failure to show a well-founded fear that, if deported to Haiti, he would be subject to persecution on account of race, religion, nationality, political opinion, or membership of a particular social group, since he was a young boy, approximately 13 years of age, at the time of the alleged murder in Haiti of his father because of the father's political opinion; respondent's mother took respondent to the Bahamas shortly thereafter and he has had virtually no contact with his native country since that time; he has not been politically active; his father, a sergeant in the army, was not a high-ranking official; and respondent has not demonstrated any reason why the government of Haiti might be interested in him at this time.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection.

ON BEHALF OF RESPONDENT: LaVern E. Kendra, Esquire
1403 Ainsley Building
Miami, Florida 33132

In a decision dated July 21, 1975, the immigration judge found the respondent deportable, denied the respondent's application for withholding of deportation under section 243(h) of the Immigration and Nationality Act, but granted the respondent the privilege of voluntary departure. The respondent has appealed from the denial of his section 243(h) claim. The appeal will be dismissed.

The respondent is a native and citizen of Haiti who entered the United States without inspection in July of 1974. Deportability is not in issue and the only questions presented on appeal involve the respondent's contention that he would be persecuted if returned to Haiti.

## THE ADMISSIBILITY OF DEPARTMENT OF STATE
## LETTERS RELATING TO PERSECUTION CLAIMS

The respondent was initially unrepresented at the hearing below. At that time he expressed his fear of being returned to Haiti, and the immigration judge adjourned the hearing in order to permit the respondent an opportunity to prepare and submit an application for withholding of deportation. The respondent then secured representation and submitted his section 243(h) claim.

Prior to the recommencement of the hearing, the Service considered the respondent's section 243(h) application as a claim to asylum, apparently under 8 CFR 108. After consultation with the Office of Refugee and Migration Affairs of the Department of State, the Service denied asylum to the respondent, and the respondent was left to pursue his section 243(h) claim before the immigration judge.

When the hearing was resumed, the Service sought to introduce into evidence both its decision denying asylum to the respondent and the correspondence from the Department of State. Counsel for the respondent objected to the receipt of this evidence, and the immigration judge sustained the objection and refused to accept this material into evidence.

The immigration judge ruled that the denial of asylum was a decision which he has no authority to review, and that the receipt into evidence of the Service's determination could only be prejudicial to the respondent's interests. The immigration judge further indicated that he viewed the attempted introduction of the Service's asylum denial as a means to try to persuade him that a denial of the section 243(h) claim was warranted.

We agree with the immigration judge that he lacks jurisdiction to review a denial of asylum, and that he must make his own independent determination on the section 243(h) application. Nevertheless, the introduction into evidence of the Service's decision denying asylum would have been proper for the limited purpose of showing that the Service had considered the respondent's claim. This would eliminate any question in connection with the application of Service policy regarding claims to asylum. See *Yan Wo Cheng* v. *Rinaldi*, 389 F. Supp. 583 (D. N. J., 1975).

However, we find no error in the immigration judge's exclusion of the Service's decision. By itself the Service's decision is not evidence of the merits of the section 243(h) claim, but merely evidence of the Service's evaluation of an analogous claim.

We do not, however, endorse the immigration judge's exclusion from evidence of the correspondence from the Department of State. We recognize that the reliability of Department of State letters regarding

claims to persecution has been questioned by the United States Court of Appeals for the Ninth Circuit. *Khalil* v. *District Director*, 457 F.2d 1276 (C.A. 9, 1972); *Hosseinmardi* v. *INS*, 405 F.2d 25, 28 (C.A. 9, 1969); *Kasravi* v. *INS*, 400 F.2d 675 (C.A. 9, 1968). See also *Paul* v. *INS*, 521 F.2d 194 (C.A. 5, 1975). Nevertheless, the Department of State may have access to information regarding the conditions in a foreign country which may not be available from any other source. These letters can be particularly useful if they contain specific information relating directly to the alien whose case is being adjudicated. In addition, Department of State letters can contain information favorable to an alien. We, therefore, cannot approve the universal exclusion of these letters from deportation proceedings.

In *Matter of Dunar*, 14 I. & N. Dec. 310 (BIA 1973), we pointed out that the discretionary nature of a section 243(h) determination is related primarily to the manner in which the adjudicating officer arrives at his opinion and to the limited scope of judicial review, not to whether a qualifying alien "deserves" the relief. See generally *Muskardin* v. *INS*, 415 F.2d 865 (C.A. 2, 1969); *Kasravi* v. *INS*, *supra; Namkung* v. *Boyd*, 226 F.2d 385 (C.A. 9, 1955); *U.S. ex rel. Dolenz* v. *Shaughnessy*, 206 F.2d 392 (C.A. 2, 1953). In exercising that discretion, potentially useful sources of information cannot be ignored simply because their reliability may be less than perfect. It is the function of the immigration judge and this Board to evaluate the weight to be assigned all the evidence in each case as it arises.

The Department of State letter excluded by the immigration judge may or may not have had much probative value. The immigration judge, however, should have admitted the letter into evidence and then assessed its value. In making that evaluation, it would also be useful to have the Service's letter requesting the Department of State's views, because in the absence of that transmittal letter it is difficult to ascertain the posture in which the Department of State considered the claim.

We have determined that the immigration judge erroneously refused to admit the Department of State letter into evidence. This, however, does not require a remand of the record. Counsel for the respondent raised an objection to the admission of the letter into evidence. We, therefore, may safely assume that the immigration judge's action of excluding the letter has not prevented us from considering evidence favorable to the respondent.

### THE RELATIONSHIP BETWEEN SECTION 243(h) AND ARTICLES 32 AND 33 OF THE UNITED NATIONS CONVENTION RELATING TO THE STATUS OF REFUGEES

In his decision, the immigration judge held that the respondent was not eligible to apply for relief from deportation under the 1951 United

Nations Convention Relating to the Status of Refugees,[1] because the respondent was not "lawfully" within the United States. In so holding the immigration judge relied on *Kan Kam Lin* v. *Rinaldi,* 361 F. Supp. 177 (D. N.J., 1973), aff'd, 493 F.2d 1229 (C.A. 3, 1974), cert. denied, 419 U.S. 874 (1974), and on *Chim Ming* v. *Marks,* 367 F. Supp. 673 (S.D.N.Y., 1973), aff'd 505 F.2d 1170 (C.A. 2, 1974), cert. denied, 421 U.S. 911 (1975). The immigration judge, however, has misread the scope of these cases.

Within the context of a deportation proceeding there are at least two articles of the Convention which arguably could have a direct bearing on the outcome of a case. See generally 8 CFR 242.8. Article 32 of the Convention provides in part that:

1. The Contracting States shall not expel a refugee *lawfully* in their territory save on grounds of national security or public order. (Emphasis added.)

It has been argued that Article 32 is a blanket prohibition against the expulsion of refugees, and that, in effect, it makes a refugee a permanent resident of the contracting state in which he resides. The cases relied upon by the immigration judge addressed the effect of Article 32, and indicated that the lawfulness of an alien's presence in the United States is to be determined in accordance with our existing immigration laws.

In *Matter of Dunar, supra,* we discussed the history behind the adoption of the Convention by the United States, and we held that an alien who entered as a nonimmigrant and remained beyond the authorized length of his stay was not "lawfully" within the United States. See *Kan Kam Lin* v. *Rinaldi, supra; Chim Ming* v. *Marks, supra.* In *Dunar* we also noted that many of the grounds of deportability set forth in section 241(a) relate to national security or public order. Thus, even if an alien refugee was held to be "lawfully" within the United States, he might not benefit from Article 32 of the Convention because of the "national security or public order" proviso to that Article. It therefore appears, with certain possible exceptions relating to deportability under section 241(a)(3) or (8), that the benefit of *Article 32* is not available to an alien who has been found deportable. See generally *Matter of Dunar, supra.*

The court cases relied upon by the immigration judge, however, did *not* directly address the question of the effect of *Article 33* on an expulsion or deportation proceeding. Article 33 provides:

1. No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened

---

[1] The Convention became binding on the United States when it adhered to the Multilateral Protocol Relating to the Status of Refugees, *done* January 31, 1967, [1968] 5 U.S.T. 6223, TIAS No. 6577 (effective November 1, 1968).

on account of his race, religion, nationality, membership of a particular social group or political opinior..

2. The benefit of the present provision may not, however, be claimed by a refugee whom there are reasonable grounds for regarding as a danger to the security of the country in which he is, or who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country.

As is readily apparent, Article 33 does not require that the refugee's presence in the contracting state be "lawful."

In *Matter of Dunar, supra,* we confronted the effect of Article 33 on section 243(h) claims to persecution. In *Dunar* we concluded that ". . . Article 33 has effected no substantial changes in the application of section 243(h), either by way of burden of proof, coverage, or manner of arriving at decisions." Elsewhere in *Dunar* we indicated that any distinctions in terminology between section 243(h) and Article 33 could be resolved on a case-by-case consideration as they arise.

Although there are no significant differences in the coverage of section 243(h) and Article 33, the immigration judge was not correct in concluding that the respondent could not apply for any relief under the Convention because of the respondent's unlawful presence in the United States. Nevertheless, we agree with the result reached by the immigration judge.

## THE RESPONDENT'S PERSECUTION CLAIM

The respondent was born in 1947. He claims that his father was a member of the Haitian military prior to the time when the Duvalier government came into power, and that his father was a supporter of the government in power before Duvalier. The respondent alleges that his father attempted to leave the Haitian military in 1960, but that his father was murdered and the family home burned because of the father's political opinion. The respondent was then approximately 13 years of age.

According to the respondent, shortly after the death of his father, his mother fled to the Bahamas with her children. The mother later married a Haitian refugee who also was murdered upon his return to Haiti in 1968. The respondent alleges that his mother has informed him that other members of their family have been murdered in Haiti. He claims no personal knowledge of the events he describes, but merely that he has been so informed by his mother.

The immigration judge made no specific finding on credibility, and for the purposes of this appeal we shall assume that the respondent's mother did in fact communicate the alleged information to the respondent. Even further assuming that the respondent's mother accurately portrayed the alleged events to the respondent, we have concluded that

the respondent has failed to meet his burden of proof on the section 243(h) claim.

The respondent was a young boy at the time the alleged events took place, and he has had virtually no contact with his native country since his mother took him to the Bahamas. He has not been politically active (Tr. p. 28), and his father, a sergeant in the army (Tr. p. 36), was not a high-ranking official. The respondent has not demonstrated any reason why the government of Haiti might be interested in him at this time.

We are satisfied that the respondent has failed to show a well-founded fear that his life or freedom will be threatened in Haiti on account of his race, religion, nationality, political opinion, or membership of a particular social group. We, therefore, conclude that he will not be subject to persecution if deported there. See *Matter of Dunar, supra.*

The result reached by the immigration judge was correct.

**ORDER:** The appeal is dismissed.

*Further order:* Pursuant to the immigration judge's order, the respondent is permitted to depart from the United States voluntarily within 19 days from the date of this order or any extension beyond that time as may be granted by the District Director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.