# In re D-V-, Applicant

*Decided May 25, 1993*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Well-founded fear of persecution in Haiti was established by a 27-year-old married female activist member of a pro-Aristide church group who was gang-raped and beaten in her home by soldiers and who was targeted by her attackers because of her political opinion and religion.

FOR APPLICANT: Caridad Amores, Esquire, Miami Springs, Florida

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: John R. Frenkel, General Attorney

BEFORE: Board Panel: DUNNE, Acting Chairman; HEILMAN, Board Member; NEJELSKI, Temporary Board Member

In a decision dated December 17, 1992, an Immigration Judge found the applicant excludable under sections 212(a)(6)(C)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(6)(C)(i) and 1182(a)(7)(A)(i)(I), denied her applications for asylum and withholding of deportation under sections 208 and 243(h) of the Act, 8 U.S.C. §§ 1158 and 1253(h), and ordered her excluded and deported from the United States. The applicant has appealed from that decision with respect to the denial of asylum and withholding of deportation. The appeal will be sustained.

To qualify for withholding of deportation, an alien must demonstrate that his or her "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 243(h)(1) of the Act, 8 U.S.C. § 1253(h)(1). In order to make this showing, the alien must establish a "clear probability" of persecution on account of one of the enumerated grounds. *INS v. Stevic*, 467 U.S. 407, 413 (1984). This clear probability standard requires a showing that it is more likely than not that an alien would be subject to persecution. *Id.* at 429-30. The relief of withholding of deportation is mandatory, in that once an alien has established that he or she qualifies for it and is not ineligible for it under section 243(h)(2) of the Act, 8 U.S.C. § 1253(h)(2), such relief must be granted. Although an alien qualifying for withholding of deportation cannot be returned to the country where he or she would face persecution, the alien

can be sent to another country under certain circumstances. *See* Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 197. In this important regard, withholding of deportation differs from asylum, which may be denied to an alien in the exercise of discretion even though the alien has established statutory eligibility for that relief. *See INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987).

To qualify for asylum, an alien must demonstrate that he or she is a "refugee" as defined under section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). *See also* section 208(a) of the Act, 8 U.S.C. § 1158(a). That definition includes the requirement that an alien demonstrate that he or she is unwilling or unable to return to his or her country because of persecution or a "well-founded fear" of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. A well-founded fear of persecution may be established upon a lesser showing than that required for a clear probability of persecution under section 243(h) of the Act. *INS v. Cardoza-Fonseca, supra; see also Matter of Mogharrabi, supra*. We have held that an asylum applicant has established a well-founded fear if he or she shows that a reasonable person in his or her circumstances would fear persecution for one of the five grounds specified in the Act. *See Matter of Mogharrabi, supra; see also Guevara-Flores v. INS*, 786 F.2d 1242 (5th Cir. 1986).

The applicant, a 27-year-old married female, is a native and citizen of Haiti who arrived in the United States on July 15, 1992. She bases her claim on brutal treatment that she suffered at the hands of soldiers because she was a supporter of former President Jean Bertrand Aristide. According to the applicant, she had worked for 6 months as a secretary for a government office under Aristide. She quit her job after she had problems with a co-worker, an Aristide opponent who repeatedly threatened her and told her that when Aristide fell she would pay. She had been an active member of a church group which was formed by and supported by Aristide. A brother of her co-worker also belonged to the group. The applicant and another member of the church committee were delegated to the larger group. The members collected money from the United States and forwarded it to the Aristide government. After the fall of Aristide, her co-worker continued to threaten the applicant and other members of the church group. On one occasion the applicant's church was surrounded by government soldiers, whom the applicant referred to as chiefs. The soldiers took one member of the church group away, and the church members learned the next day that he had died.

The applicant stated that the soldiers subsequently came to her family home where they gang-raped and severely beat her. When the soldiers knocked on the gate to her house, they asked for her by her nickname. The soldiers entered the house after the applicant opened the door and her mother opened the outer gate. The applicant's husband was away on business at the time. The soldiers knew that she belonged to the church group. As they

passed through the doorway, they said the other church group member had already been killed "so [she] was next, [she] was behind." The soldiers wore stockings on their heads and red scarves tied around their wrists. The scarves were like those worn by the Ton Ton Macoutes, which had signified blood and had meant that people and places would be ravaged. Although the applicant tried to tell the soldiers that the person they asked for was not at home, they identified her by the hair on her feet. One of the soldiers said to her, "[Y]ou're the one that supported a fanatic for Aristide." The soldiers then held a weapon next to the applicant's ear. Her mother gave them some money, pleading with them to spare the daughter's life. Three of the soldiers raped the applicant and beat her. The applicant's mother gave them a case with some American money to get them to leave. Before the soldiers went away, they warned the applicant that if she talked about them or reported them to the radio station they would be back. After the rape incident, the applicant went into hiding in different locations in Haiti until she was able to leave the country. While still in Haiti she was examined by a doctor, who told her that she would not be able to have children because she had sustained some type of internal shock. Since then, she has been pregnant but has miscarried after about 2 months.

In his decision, the Immigration Judge found the applicant credible, in that the information in her testimony, her Form I-589 asylum application filed on November 3, 1992, and her sworn statement dated July 15, 1992, was generally consistent. Nevertheless, the Immigration Judge determined that the applicant had failed to demonstrate a well-founded fear of persecution on the basis of her political opinion because the evidence did not show her to be a prominent supporter of Aristide. According to the Immigration Judge, the applicant's fear of returning to Haiti was based on the general conditions of violence in that country, and it was pure speculation on her part that the same attackers would rape and beat her again or kill her.

Unlike the Immigration Judge, we find that the applicant has proven that she has a well-founded fear of persecution based on her political opinion and religion if she were returned to Haiti. The applicant's direct and uncontradicted testimony establishes that she has suffered grievous harm in direct retaliation for her support of and activities on behalf of Aristide. In the file is an advisory opinion from the United States Department of State's Bureau of Human Rights and Humanitarian Affairs (BHRHA) issued pursuant to 8 C.F.R. § 208.11 (1992). *See Matter of Exilus,* 18 I&N Dec. 276 (BIA 1982); *Matter of Saban*, 18 I&N Dec. 70 (BIA 1981); *cf. Jean v. INS,* 564 F.2d 155 (3d Cir. 1987); *Asghari v. INS*, 396 F.2d 391 (9th Cir. 1968); *Matter of Francois*, 15 I&N Dec. 534 (BIA 1975). According to the BHRHA opinion dated November 20, 1992, "persons who were prominent supporters of President Aristide or are currently open and activist supporters of Aristide are likely to remain at risk, especially if they engage in public political activities." Clearly, the applicant was an active member of a church group, which

provided funds for projects endorsed by Aristide. She thus could be considered one of Aristide's activist supporters. The evidence reflects that her attackers, who knew her by name and knew of her membership, targeted her previously because of her political and religious opinion and that they well might do so again if she were back in Haiti. There is apparently no significant adverse factor contravening a favorable exercise of discretion regarding her asylum application.

Accordingly, we will sustain the appeal and grant the applicant's asylum request. Inasmuch as the applicant's asylum application has been approved, we need not address the issue of her eligibility for withholding of deportation under the more stringent standard of section 243(h) of the Act. *See Matter of Mogharrabi, supra.*

**ORDER:** The appeal from the denial of asylum is sustained.

**FURTHER ORDER:** The applicant's application for asylum under section 208(a) of the Act is approved, and the proceedings are terminated.