In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1999

YEISON MEZA MORALES,

*Petitioner*,

*v.*

WILLIAM P. BARR, Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A216-222-551

ARGUED APRIL 7, 2020 — DECIDED JUNE 26, 2020

AMENDED SEPTEMBER 3, 2020

Before ROVNER, HAMILTON, and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. Yeison Meza Morales is a native and citizen of Mexico who entered the United States without inspection as a child. As an adult, Meza Morales petitioned for U nonimmigrant status, a special visa for victims of certain crimes. While his petition was pending, he was charged as re-

movable based on two grounds of inadmissibility. Meza Morales cited his pending U visa petition as a defense to his removal. The immigration judge agreed to waive both grounds of inadmissibility to allow him to pursue the U visa petition, but later ordered Meza Morales removed as charged on those same grounds.

Meza Morales petitioned us for review of the removal order. He contends that the immigration judge's initial waiver of both grounds of inadmissibility precluded their use as grounds for an order of removal. We disagree; Meza Morales's position would effectively turn the inadmissibility waiver into a substitute for the U visa itself. We nevertheless grant his petition for review on two other bases. Meza Morales had asked the immigration judge to continue or administratively close his case instead of ordering removal. The immigration judge entered the removal order based on the conclusion that those alternative procedures were inappropriate, and the Board affirmed on the same basis. But those alternatives were wrongly rejected. We grant the petition for review and remand the case so that the Board can reconsider.

## I.

A noncitizen who becomes a victim of certain crimes while in the United States may petition for U nonimmigrant status—more commonly known as a U visa. 8 U.S.C. § 1101(a)(15)(U). Congress created the visa to encourage crime victims to report crimes and assist law enforcement with investigation and prosecution. A U visa generally entitles an eligible noncitizen to lawfully remain in the United States and to seek work authorization. *Id.* § 1184(p)(6).

The decision whether to grant a U visa petition is committed by statute to the Secretary of Homeland Security, who exercises this authority through U.S. Customs & Immigration Services (USCIS). *See* 8 C.F.R. § 214.14. To qualify for a U visa, a noncitizen must satisfy four substantive criteria: (1) he must have suffered "substantial physical or mental abuse" as the result of one of the crimes listed in the U visa provision; (2) he must possess credible and reliable knowledge of the details of the crime; (3) he must help or be likely to be helpful in the investigation or prosecution of the crime; and (4) the crime must have taken place in the United States. *Id.* § 214.14(b).

In addition to those specific requirements, a noncitizen seeking a U visa must be "admissible" to the United States—in other words, eligible for a visa and lawful entry into the United States. 8 U.S.C. § 1182(a). There are several reasons why a noncitizen may be "inadmissible" and therefore ineligible for a visa. Among them are convictions for certain crimes and being present in the United States without having been inspected and authorized by an immigration official. *See id.* §§ 1101(a)(13)(A), 1182(a)(6)(A)(i).

But inadmissibility is not a complete obstacle to acquiring a U visa; a noncitizen can apply to have her inadmissibility waived for the purpose of petitioning for U nonimmigrant status. In this circuit, there are two ways for a U visa petitioner to secure a waiver of inadmissibility. The first is by application to USCIS. Congress provided that the Secretary of Homeland Security can waive almost any ground of inadmissibility for a noncitizen who is applying for a U visa. 8 U.S.C. § 1182(d)(14). USCIS implements this U visa inadmissibility waiver program on behalf of the Secretary, granting a waiver application if it determines that it is "in the public or national

interest" to do so. 8 C.F.R. § 212.17(b)(1). Because USCIS is also the office that decides whether to grant or deny U visas, a noncitizen pursuing this route may seek a waiver and a U visa at the same time. *Id.* § 214.14(c)(2)(iv).

U visa petitioners in this circuit have an additional option for obtaining a waiver of inadmissibility. Congress gave the Attorney General the authority to waive most grounds of inadmissibility listed in § 1182(a) for certain noncitizens seeking admission. 8 U.S.C. § 1182(d)(3)(A). In *L.D.G. v. Holder*, we held that the Attorney General's general inadmissibility waiver authority extends to U visa petitioners, notwithstanding the narrower provision allowing the Secretary of Homeland Security to waive inadmissibility specifically for U visa applicants. 744 F.3d 1022, 1030 (7th Cir. 2014). Thus, U visa petitioners can seek a waiver of inadmissibility from the Attorney General as well as from USCIS.[1] And as delegates of the Attorney General, immigration judges have the power to grant waivers of inadmissibility—for example, during removal proceedings when noncitizens invoke their forthcoming U visa petition as a defense to removal. *Baez-Sanchez v. Sessions*, 872 F.3d 854, 856 (7th Cir. 2017). This alternative waiver procedure can create coordination problems because

---

[1] There is a circuit split on this issue. The Eleventh Circuit has followed us in holding that the Attorney General can grant a waiver of inadmissibility. *Meridor v. U.S. Att'y Gen.*, 891 F.3d 1302 (11th Cir. 2018). The Third and Ninth Circuits, by contrast, have held that U visa petitioners can pursue a waiver of inadmissibility only from USCIS. *Sunday v. Att'y Gen. of the U.S.*, 832 F.3d 211 (3d Cir. 2016); *Man v. Barr*, 940 F.3d 1354 (9th Cir. 2019). At oral argument in this case, the government expressed frustration with the inconsistency. But the government has not asked us to overrule *L.D.G.*, which we have recently reaffirmed. *Baez-Sanchez v. Barr*, 947 F.3d 1033 (7th Cir. 2020).

two different arms of the executive branch grant the waiver and the visa. These coordination problems are on full display in this case.

But before we get to the procedural posture of Meza Morales's case, another feature of the U visa scheme bears mention: the waiting list. By statute, USCIS may issue no more than 10,000 U visas per calendar year. 8 U.S.C. § 1184(p)(2)(A). Many more than 10,000 applicants meet the criteria for U status each year, *see L.D.G.*, 744 F.3d at 1024, so USCIS places on a waiting list all eligible U visa petitioners who would be granted a visa if not for the statutory cap. 8 C.F.R. § 214.14(d)(2). It grants U visas to petitioners on the waiting list in chronological order. *Id.* In the meantime, petitioners on the U visa waiting list are granted deferred action—a form of prosecutorial discretion that allows a noncitizen to lawfully remain in the United States for a fixed period of time but does not provide legal status. *Id.* It is the policy of Immigration and Customs Enforcement (ICE), the office within the Department of Homeland Security (DHS) responsible for immigration enforcement, not to deport a U visa petitioner who has been placed on the waitlist and granted deferred action. *Revision of Stay of Removal Request Reviews for U Visa Petitioners*, U.S. IMMIGR. & CUSTOMS ENFORCEMENT (Aug. 2, 2019), https://www.ice.gov/factsheets/revision-stay-removal-request-reviews-u-visa-petitioners [hereinafter *ICE Fact Sheet*].

With the U visa scheme laid out, we turn to the present case. Meza Morales is a native and citizen of Mexico. As a child, he entered the United States without inspection in December 2002, and he has lived in the United States ever since. In October 2013, Meza Morales was walking home through his neighborhood in Indianapolis when he encountered a

group of men arguing. He ran from them, but one of the men shot him in the ankle while he was running. Meza Morales recovered from the shooting and cooperated in the police investigation that followed.

As a shooting victim, Meza Morales applied for a U visa in August 2017. But before USCIS acted on his U visa petition, ICE initiated removal proceedings against him. In early 2018, DHS charged Meza Morales as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted and under 8 U.S.C. § 1182(a)(2)(A)(i)(II) for a 2014 conviction for possession of marijuana. The immigration judge deemed him removable under both charges. Meza Morales, appearing pro se, admitted both charges but explained that he was a crime victim and had already applied for a U visa. The immigration judge agreed to continue the removal proceedings for thirty days to allow USCIS to adjudicate the pending visa petition. The immigration judge also granted a waiver of inadmissibility for purposes of his U visa petition under 8 U.S.C. § 1182(d)(3)(A), as permitted by *L.D.G.* Thirty days later, USCIS still had not made a decision on Meza Morales's U visa petition. In his next appearance, Meza Morales asked the immigration judge either to continue the case further or to administratively close it—two procedural devices that allow an immigration judge to temporarily set aside a pending case. The immigration judge rejected both options and instead entered an order of removal.

Meza Morales appealed to the Board of Immigration Appeals, arguing that the removal order was inconsistent with the waiver and that the immigration judge should have en-

tered a continuance or administrative closure. The Board affirmed the removal order, and soon ICE began the process of removing Meza Morales. He applied to our court for an emergency stay of removal, which we granted. Then, collateral to the removal proceedings, USCIS adjudicated his U visa petition. The office deemed him eligible for a U visa but placed him on the waiting list due to the statutory cap. It then granted Meza Morales deferred action, and accordingly, released him from detention. The removal order remains on the books, though, and Meza Morales continues to petition our court for review of it.

## II.

Before we can assess the merits of Meza Morales's petition, we must assure ourselves of our jurisdiction. By statute, we have jurisdiction to address questions of law raised in a petition for review from a final removal order. 8 U.S.C. § 1252(a)(2)(D). The government contends that this appeal became moot, though, when USCIS finally adjudicated Meza Morales's U visa petition and placed him on the waiting list.

Federal court jurisdiction is limited to the resolution of "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). If developments in a case make it impossible for a court to grant "any effectual relief whatever" to the prevailing party, then we must dismiss the appeal as moot. *Mills v. Green*, 159 U.S. 651, 653 (1895). According to the government, it is no longer possible for our court to grant Meza Morales any effectual relief.

The government misunderstands both the relief that Meza Morales requests and the effect of his U visa adjudication. The crux of Meza Morales's appeal is that the immigration judge was wrong to order him removed instead of granting a continuance or administrative closure. The relief that he has requested all along is vacatur of the removal order. It is still possible for us to grant that relief because the removal order remains in place. By regulation, favorable adjudication of a U visa petition does not automatically cancel a removal order entered by an immigration judge. 8 C.F.R. § 214.14(c)(5)(i). Meza Morales may seek to cancel the removal order by filing a motion to reopen and terminate removal proceedings, but cancelation is not guaranteed. *Id.* (ICE retains the discretion not to join a motion to reopen, but the Attorney General understandably cannot promise that ICE would join a motion to reopen if Meza Morales filed one. *Id.*) Since the removal order remains in effect, it is still possible for us to grant Meza Morales the relief that he requests.

True, Meza Morales may not in fact be removed anytime soon because it is ICE policy not to remove a noncitizen who is placed on the U visa waiting list and granted deferred action. *ICE Fact Sheet*. But protection from removal is not guaranteed. USCIS retains discretion to remove him from the waiting list and withdraw his deferred action. 8 C.F.R. § 214.14(d)(3). Meza Morales's controversy therefore remains live, and we proceed to the merits.

### III.

Meza Morales raises three challenges to the Board's decision affirming the order of removal. First, he contends that it is logically inconsistent for an immigration judge to enter a removal order on the same grounds of inadmissibility that the

immigration judge has already waived. Second, he argues that the Board misapplied relevant precedents in considering whether another continuance was warranted. And third, he asserts that the Board was wrong to hold that immigration judges lack the power to administratively close cases. We address each argument in turn.

A.

Meza Morales first argues that it is legal error to enter a removal order after granting a waiver of inadmissibility under 8 U.S.C. § 1182(d)(3)(A). He asserts that the waiver nullified both grounds of inadmissibility with which he was charged, leaving no basis on which he can be removed. The government responds that the waiver is no more than a procedural step in the collateral U visa adjudication and cannot block removal. Meza Morales remains removable, the government contends, because he still lacks a lawful basis for residing in this country. Our task is to determine which understanding of the waiver's effect is correct.

Meza Morales's position has superficial appeal. It leans on the intuition that waivers of inadmissibility generally "relieve applicants of the effects of past conduct." *L.D.G.*, 744 F.3d at 1028. If Meza Morales has been relieved of the effects of his past conduct, then one might think it contradictory that he can be removed on the basis of that same conduct. But in Meza Morales's case, there is no contradiction between the two. A waiver of inadmissibility granted in a removal proceeding protects a noncitizen from removal only if the noncitizen otherwise has lawful immigration status—for example, if she has a visa or the status of lawful permanent resident. In that event, the waiver clears the only obstacle to the noncitizen's

lawful presence. Meza Morales, however, has no lawful im-
migration status; he is still waiting on a U visa. For him, the
§ 1182(d)(3)(A) waiver is a necessary but insufficient step to-
ward lawful presence.

This makes his situation relatively unique. As we have al-
ready explained, our circuit allows immigration judges to
grant waivers of inadmissibility under § 1182(d)(3)(A) to U
visa petitioners in removal proceedings. *See L.D.G.*, 744 F.3d
1022. There is essentially no other situation in which an immi-
gration judge would grant a § 1182(d)(3)(A) waiver to a
noncitizen who needs—but does not yet have—a temporary
visa. *See* 8 U.S.C. § 1182(d)(3)(A)(ii) (covering noncitizens
who are "in possession of appropriate documents or [are]
granted a waiver thereof and [are] seeking admission"). In the
usual course, an immigration judge reviews a § 1182(d)(3)(A)
waiver application after the noncitizen has initially applied to
DHS for a waiver at a port of entry, entered the United States
pursuant to a grant of deferred inspection, and been placed in
removal proceedings after DHS denies the waiver. *See Matter
of Khan*, 26 I. & N. Dec. 797, 802 (B.I.A. 2016); *see also Sunday*,
832 F.3d at 217. Then, once placed in removal proceedings, the
noncitizen is permitted to renew her waiver application be-
fore the immigration judge. 8 C.F.R. § 235.2(d); *id* § 1235.2(d).
A noncitizen who secures a waiver from the immigration
judge surmounts the only impediment to lawful temporary
admission, because the only noncitizens who can apply for a
§ 1182(d)(3)(A) waiver at a port of entry are those who are ex-
empt from the visa requirement (Canadians, for example) or
those who already hold nonimmigrant visas but who have an
inadmissibility problem that invalidates those visas. 8 U.S.C.
§ 1182(d)(3)(A)(ii); *see also* 8 C.F.R. § 212.4(b); *id.* § 1212.4(b).
So if the immigration judge grants the waiver, the noncitizen

has everything required for lawful presence, because she either already has a visa or does not need one.

The waiver works the same way in the cases that Meza Morales invokes to support his position. He points out that in the context of other types of inadmissibility waivers, the Board has understood the grant of a waiver to foreclose removal. *See Matter of Balderas*, 20 I. & N. Dec. 389 (B.I.A. 1991); *Matter of Mascorro-Perales*, 12 I. & N. Dec. 228 (B.I.A. 1967); *Matter of Edwards*, 10 I. & N. Dec. 506 (B.I.A. 1963). Each of these cases involved a lawful permanent resident threatened with removal due to a conviction for crimes involving moral turpitude; in each, the Board terminated the removal proceedings after granting a waiver of inadmissibility, reasoning that "a waiver, once granted, should remain valid indefinitely for all proceedings, including both deportations and exclusion proceedings." *Balderas*, 20 I. & N. Dec. at 393; *see id.* at 390 n.1 (explaining that a lawful permanent resident may pursue certain waivers of inadmissibility at removal if the grounds of removal are also grounds of inadmissibility). But in each of these cases, the waiver foreclosed removal because it protected the noncitizen's status as a lawful permanent resident. The waiver was not itself the basis for lawful presence.

Meza Morales is differently situated because he lacks lawful immigration status. Being "relieved of the effects of [his] past conduct" renders Meza Morales *eligible* for a visa. But until he secures one, he still lacks a legal basis for lawful presence in the United States. Rather than protecting his status, the waiver is a step on the road to obtaining it.

Ignoring that distinction, Meza Morales urges us to interpret a § 1182(d)(3)(A) waiver as effectively making him unre-

movable. But his interpretation is at odds with the U visa pro-
vision, which makes clear that it is the *visa*, not the waiver,
that confers status on a noncitizen. 8 U.S.C. § 1101(a)(15)(U).
Only the Secretary of Homeland Security, through his dele-
gates, may grant a U visa, through the procedures laid out by
statute. *Id.* The statute does not allow for the waiver to sup-
plant the visa, so a waiver of inadmissibility alone cannot
foreclose removal.

This understanding is consistent with *L.D.G.* In that case,
we explained that a waiver of inadmissibility allows a noncit-
izen "to gain eligibility for a U visa."[2] 744 F.3d at 1028. We
characterized the U visa, not the waiver, as the procedure that
allows noncitizens "to remain in the United States as lawful
temporary residents despite being otherwise subject to re-
moval." *Id.* at 1024. Allowing the waiver to preclude removal
is inconsistent with both our case law and the statutory re-
gime. We therefore reject Meza Morales's first challenge to the
removal order.

### B.

The case does not end here. Recall that Meza Morales
asked the immigration judge to continue or administratively

---

[2] In this respect, a waiver of inadmissibility is not analogous to other
forms of relief to which Meza Morales attempts to analogize, like asylum.
Asylum can qualify a petitioner for the withholding of removal, *see Matter
of D-V-*, 21 I. & N. Dec. 77, 80 (B.I.A. 1993), but in the case of a U visa, a
waiver is only the first procedural step to relief.

close his case instead of ordering removal. Meza Morales argues that both procedural options were wrongly rejected.[3]

We'll start with the continuance. When it declined to continue Meza Morales's case, the Board cited to what was then its leading precedential opinion on U visa continuances, *Matter of Sanchez Sosa*, 25 I. & N. Dec. 807 (B.I.A. 2012).[4] Meza Morales argues that the Board failed to properly apply the factors laid out in that opinion.

The government initially responded that the Board had been correct to deny the continuance. But after the briefs in this case were filed, the government asked us to remand this

---

[3] Because Meza Morales continues to pursue a continuance or administrative closure, we address his arguments. But we note that each of these procedural options is a double-edged sword for Meza Morales. While continuing or closing the case would stave off entry of a final order of removal, both would also render the waiver of inadmissibility nonfinal. *See Matter of W-Y-U-*, 27 I. & N. Dec. 17, 17 (B.I.A. 2017) (explaining that neither a continuance nor administrative closure constitutes a final order); *see also Vahora v. Holder*, 626 F.3d 907, 914–15 (7th Cir. 2010). A noncitizen on the U visa waiting list can be granted a U visa only if he still remains admissible. 8 C.F.R. § 214.14(d)(2). A nonfinal waiver of admissibility might jeopardize Meza Morales's pending U visa application—a risk that he may not want to take while he enjoys deferred action. Although we note the potential pitfalls of a nonfinal waiver of inadmissibility, we express no view on whether the government might be precluded from contesting the waiver on the basis of forfeiture, waiver, estoppel, or some other ground.

[4] Meza Morales originally asked that his case be continued until USCIS could adjudicate his U visa petition. USCIS has since favorably adjudicated the U visa petition, but this claim is still live because on remand the immigration judge could continue the case until Meza Morales secures the visa. *Cf. Qureshi v. Gonzales*, 442 F.3d 985, 988 (7th Cir. 2006) (deeming a case to be mooted in the converse scenario, when the collateral petition was adjudicated *unfavorably* and no basis for a continuance remained).

claim to the Board to allow it to consider two relevant new opinions. After the Board rendered its decision in this case, it issued a precedential opinion in *Matter of Mayen*, 27 I. & N. Dec. 755 (B.I.A. 2020), clarifying the application of the factors in *Sanchez Sosa*. A few months later, our court issued a decision in *Guerra Rocha v. Barr*, 951 F.3d 848, 853 (7th Cir. 2020), in which we emphasized that prima facie eligibility for a U visa was the most important factor to consider in deciding whether to grant a continuance. The government asks that we grant Meza Morales's petition for review as to the continuance to allow the Board to apply those new precedents for the first time. Meza Morales does not object. We agree that the Board should be given the opportunity to apply *Mayen* and *Guerra Rocha* in the first instance. We grant the petition for review and remand to the Board to reconsider whether another continuance was in fact an inappropriate alternative to a removal order.

C.

Meza Morales has a final objection to the Board's decision. In his removal proceedings, he had alternatively urged the immigration judge to administratively close his case rather than order removal. Administrative closure is a procedural device that temporarily takes a removal case off of an immigration judge's calendar, preventing it from moving forward. *Vahora v. Holder*, 626 F.3d 907, 914 (7th Cir. 2010). Until recently, immigration judges used the procedural tool of administrative closure for a variety of reasons, including to permit a noncitizen to pursue alternative relief—such as a U visa—from USCIS. The use of administrative closure was blessed and clarified in *Matter of Avetisyan*, 25 I. & N. Dec. 688 (B.I.A. 2012), and *Matter of W-Y-U-*, 27 I. & N. Dec. 17 (B.I.A.

2017). But in *Matter of Castro-Tum*, the Attorney General employed administrative adjudication to overrule *Avetisyan* and hold that immigration judges and the Board lack the authority to administratively close cases "except where a previous regulation or settlement agreement has expressly conferred it." 27 I. & N. Dec. 271, 283 (Att'y Gen. 2018). The immigration judge in this case held that he was bound by *Castro-Tum* to reject Meza Morales's request for administrative closure, and the Board affirmed that conclusion.

We typically review the denial of administrative closure for abuse of discretion. *Vahora*, 626 F.3d at 919. Here, though, Meza Morales challenges the legal conclusion that administrative closure is disallowed, not the discretionary decision to deny closure. Abuse of discretion is therefore not the appropriate standard of review in this case. Although the Board's decision in Meza Morales's case was unpublished and non-precedential, the Board and the immigration judge based their rulings on *Castro-Tum*, a precedential opinion authored by the Attorney General. It is therefore the legal interpretation in *Castro-Tum* that we review for error. *See Arobelidze v. Holder*, 653 F.3d 513, 519 (7th Cir. 2011).

*Castro-Tum* holds that no statute or regulation gives immigration judges the general power to administratively close cases. Meza Morales argues that *Castro-Tum* is an erroneous interpretation of the immigration regulations, which he contends do grant that power to immigration judges. The government responds that *Castro-Tum* correctly interprets the clear text of the regulations; in the alternative, it argues that *Castro-Tum* is a reasonable interpretation of the regulatory language and is therefore entitled to deference under *Auer v. Robbins*,

519 U.S. 452 (1997).[5] *Auer* only applies, however, to agency interpretations of genuinely ambiguous regulations—and the Supreme Court has recently warned us not to leap too quickly to the conclusion that a rule is ambiguous. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("A court cannot wave the ambiguity flag just because it found the regulation impenetrable on first read."). We can defer only if careful application of the "traditional tools of construction" yields no definitive answer. *Id.* With the Court's admonition in mind, we turn to the regulatory scheme that *Castro-Tum* interprets.

As *Castro-Tum* points out, no statute or regulation explicitly confers upon immigration judges a general power of administrative closure. The more difficult question is whether any of the immigration regulations that grant immigration judges their general powers is broad enough to implicitly encompass that authority. *Castro-Tum* analyzes and dismisses a few regulatory provisions that could arguably encompass a general administrative-closure power. The most salient is 8 C.F.R. § 1003.10(b), which explains, "In deciding the individual cases before them, … immigration judges shall exercise their independent judgment and discretion and may take *any action* consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition

---

[5] The government also invokes *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the deference regime applicable to agency interpretations of statutes. But Meza Morales does not argue that the Attorney General exceeded his statutory authority, which broadly covers the administration of immigration laws. 8 U.S.C. § 1103(a)(1). Instead, Meza Morales contends that *Castro-Tum* misinterprets the Attorney General's own regulations. As such, *Auer* deference, which applies to agency interpretations of their own regulations, is the potentially relevant deference doctrine.

of such cases" (emphasis added). The provision goes on to provide a list—which does not purport to be exhaustive—of some of an immigration judge's powers, such as the power to receive evidence. 8 C.F.R. § 1003.10(b). It concludes that immigration judges shall resolve their cases in a "timely and impartial manner." *Id.*

*Castro-Tum* parses 8 C.F.R. § 1003.10(b) and concludes that it does not grant immigration judges the power to administratively close cases. It contends that closure cannot be "appropriate and necessary" to the "disposition" of cases since closure is a suspension that delays the final resolution of a case. 27 I. & N. Dec. at 285. And it reasons that a general power to administratively close cases would conflict with the regulation's requirement that immigration judges "timely" resolve their cases.

We disagree. On its face, 8 C.F.R. § 1003.10(b) grants immigration judges broad authority. It permits the discretionary exercise of "any action" that is "appropriate and necessary for the disposition of … cases." Administrative closure is plainly an "action." And "appropriate and necessary" is a capacious phrase. *See Michigan v. EPA*, 135 S. Ct. 2699, 2707 (2015). Unsurprisingly, then, an immigration judge might sometimes conclude, in exercising the discretion granted by 8 C.F.R. § 1003.10, that it is appropriate and necessary to dispose of a case through administrative closure. For example, in cases in which two coordinate offices in the executive branch are simultaneously adjudicating collateral applications, closing one proceeding might help advance a case toward resolution. *See Romero v. Barr*, 937 F.3d 282, 293 (4th Cir. 2019) (characterizing the facts underlying *Avetisyan* as presenting such a situation); *see also Matter of Hashmi*, 24 I. & N. Dec. 785, 791 n.4 (B.I.A.

2009) (encouraging administrative closure in appropriate circumstances). Moreover, cases must be disposed of fairly, and granting a noncitizen the opportunity to pursue relief to which she is entitled may be appropriate and necessary for a fair disposition. *See Vahora*, 626 F.3d at 918.

Further, the regulation's requirement that cases be resolved in "timely" fashion does not foreclose administrative closure. For one thing, "timeliness" is not a hard and fast deadline; some cases are more complex and simply take longer to resolve. Thus, not all mechanisms that lengthen the proceedings of a case prevent "timely" resolution. That is presumably why nobody appears to think that continuances conflict with the regulation's timeliness requirement. *See* Memorandum 15-01 from Brian M. O'Leary, Chief Immigration Judge, to All Immigration Judges 3 (Apr. 6, 2015). And while *Castro-Tum* tries to draw reinforcement from the general policy of expeditiousness underlying immigration law, that policy doesn't justify departure from the plain text of the rule. Immigration laws and regulations, like all laws and regulations, are the product of compromise over competing policy goals. Expeditiousness may be one such goal, but it is not the only goal. In our view, the text supports Meza Morales's reading.

*Castro-Tum* insists, though, that interpreting 8 C.F.R. § 1003.10(b) to mean what it says would render other regulatory provisions superfluous. For example, a separate provision of the regulations explicitly grants immigration judges the power to continue cases. 8 C.F.R. § 1003.29. One might think that the existence of a specific continuance provision suggests that the general grant of authority in 8 C.F.R. § 1003.10(b) does not implicitly encompass the power to grant

continuances. *Castro-Tum*, 27 I. & N. Dec. at 289 ("[I]f immigration judges already possessed such authority, there would have been little point in expressly empowering immigration judges to grant continuances."). And if the general authority provision does not confer the power to grant continuances, it wouldn't implicitly grant the power to administratively close cases either. *Id.* But in fact, the specific continuance provision at 8 C.F.R. § 1003.29 is not redundant of 8 C.F.R. § 1003.10(b)'s broad grant. *Castro-Tum* does not acknowledge that 8 C.F.R. § 1003.29 does more than grant immigration judges the authority to continue cases—that regulation also specifies that good cause is the standard for granting continuances. Thus, the specific continuance provision doesn't give us reason to doubt the breadth of 8 C.F.R. § 1003.10(b).

Nor do the regulations that explicitly mention administrative closure render 8 C.F.R. § 1003.10(b) superfluous. Several provisions direct immigration judges to administratively close certain cases. *E.g.*, 8 C.F.R. § 1245.13(d)(3)(i) (mandating administrative closure in certain cases involving Nicaraguan and Cuban nationals); *id.* § 1245.15(p)(4)(i) (same for certain cases involving Haitian nationals); *id.* § 1214.3 (same for certain cases involving applicants for V nonimmigrant status). *Castro-Tum* claims that "[t]hese instances of limited, express authorization reinforce the conclusion that no broad delegation of authority exists." 27 I. & N. Dec. at 288. We don't see why. These provisions mandate administrative closure in specific circumstances with "shall" language, while 8 C.F.R. § 1003.10(b) uses "may" language to grant immigration judges the general power to use administrative closure where appropriate. If anything, the directives in these other provisions that immigration judges "shall" administratively close certain cases imply a preexisting general authority to do so.

*Castro-Tum* places particular emphasis on the potential superfluity of a regulation providing that immigration judges "may" administratively close certain cases involving a pending application for a T visa—a visa for certain victims of human trafficking. 8 C.F.R. § 1214.2(a). What would be the point of such a specific regulation, the opinion posits, if the broader regulation at 8 C.F.R. § 1003.10(b) already conferred a general authority to administratively close cases? To answer this question, we first note that when 8 C.F.R. § 1214.2(a) was promulgated in 2003, Board precedent already permitted immigration judges to administratively close cases if both parties agreed to the closure. *See Matter of Gutierrez*, 21 I. & N. Dec. 479, 480 (B.I.A. 1996). Against that backdrop, it makes little sense to read the regulation as implicitly assuming that administrative closure is disallowed in other circumstances. Instead, 8 C.F.R. § 1214.2(a) appears to identify a particular class of cases—those involving T visas—in which administrative closure is especially appropriate. The specific regulation makes another contribution, too. It also provides for the automatic termination of the closed proceeding if the T visa is granted and for automatic reinstatement if it is denied. *Id.* Neither consequence would otherwise automatically flow from USCIS's disposition of the application. So 8 C.F.R. § 1214.2(a) would not be mere surplusage under a plain-meaning reading of 8 C.F.R. § 1003.10(b).

In sum, *Castro-Tum*'s interpretive arguments fail to convince us that administrative closure is not plainly within an immigration judge's authority to take "any action" that is "appropriate and necessary for the disposition of … cases." 8

C.F.R. § 1003.10(b).[6] *See Romero*, 937 F.3d at 297 (reaching the same conclusion). Because the regulation gives a "single right answer," *Kisor*, 139 S. Ct. at 2415, *Auer* deference is unwarranted.[7] The Attorney General may amend these rules through the proper procedures. But he may not, "under the guise of interpreting a regulation, … create *de facto* a new regulation" that contradicts the one in place. *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). We therefore reject *Castro-Tum* and hold that immigration judges are not precluded from administratively closing cases when appropriate.

\* \* \*

The petition for review is GRANTED. If Meza Morales continues to pursue these forms of relief, the Board should reconsider on remand whether a continuance was appropriate

---

[6] Because we conclude that 8 C.F.R. § 1003.10(b) grants immigration judges the power to administratively close cases, we need not reach the other potential regulatory sources of that authority that *Castro-Tum* also considered and dismissed. *See, e.g.*, 8 C.F.R. §§ 1003.1(d)(ii), 1240.1(a)(1), (c). Nor do we need to consider the argument rejected by *Castro-Tum* that immigration judges have a general administrative-closure power based on their inherent adjudicatory authority.

[7] We note that deference might not be warranted at this stage even if we had found the regulation ambiguous. *Castro-Tum* is written as a clarification of the meaning of regulatory language that is thorny but not ambiguous. Courts tend to be skeptical of requests for deference made by an agency during litigation if the agency failed to acknowledge any ambiguity while exercising its delegated authority. *See, e.g.*, *Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.*, 471 F.3d 1350, 1354 (D.C. Cir. 2006) (finding a rule ambiguous but rejecting the agency's request for *Chevron* deference since the rule had assumed that the statute was unambiguous); *see also Kisor*, 139 S. Ct. at 2417 ("[A] court should decline to defer to a merely 'convenient litigating position' or '*post hoc* rationalizatio[n] advanced' to 'defend past agency action against attack.'" (citation omitted)).

in light of new opinions in *Matter of Mayen* and *Guerra Rocha v. Barr*. It should also reconsider whether to administratively close the case.