In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 20-1304

HECTOR MANUEL ZELAYA DIAZ,
a.k.a. ELVIS DANIEL ROSALES-SARMIENTO,

*Petitioner,*

*v.*

JEFFREY A. ROSEN,
Acting Attorney General of the United States,

*Respondent.*

---

Petition for Review of a Decision of the
Board of Immigration Appeals.
No. A073-755-354.

---

ARGUED NOVEMBER 5, 2020 — DECIDED JANUARY 15, 2021

---

Before SYKES, *Chief Judge*, and HAMILTON and SCUDDER, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This petition for judicial review of an immigration decision focuses on the power of an immigration judge to close a removal or deportation case administratively while the non-citizen pursues other relief. The Board of Immigration Appeals denied relief in this case by following

a directive of the Attorney General that sharply limited the power of immigration judges to close a case administratively. Earlier this year, however, we held that the Attorney General's directive was contrary to law. *Meza Morales v. Barr*, 973 F.3d 656, 667 (7th Cir. 2020). The Board of Immigration Appeals simply did not exercise its discretion according to law in this case. We therefore grant the petition for review and remand for a proper exercise of discretion under the Board's precedents in *Matter of Avetisyan*, 25 I&N Dec. 688 (BIA 2012), and *Matter of W-Y-U*, 27 I&N Dec. 17 (BIA 2017).

I.   *Factual and Procedural History*

Petitioner Hector Manuel Zelaya Diaz entered the United States without inspection on May 6, 1995. He was placed in deportation proceedings with an Order to Show Cause. He was scheduled to appear for a master calendar hearing on August 23, 1995. The notice of that hearing did not reach him, and Zelaya failed to appear. A final order of deportation was entered in his absence. Zelaya later left the United States, but he re-entered sometime before December 30, 1998. In 2014, U.S. Immigration and Customs Enforcement learned of Zelaya's presence in the United States following a traffic-related arrest in Indiana. On February 3, 2014, Zelaya filed a motion to reopen his old deportation case. An immigration judge granted that motion because the record showed that the initial Order to Show Cause in 1995 had never reached him.

At a March 22, 2018 master calendar hearing, Zelaya moved for administrative closure of his deportation proceeding to allow for what is known in the world of immigration law as "repapering," by which a deportation proceeding that began under pre-1996 law can be converted into a cancellation-of-removal proceeding under 1996 legislation codified in

8 U.S.C. § 1229b(b). Repapering would enable Zelaya to seek cancellation of removal, for which he appears to be legally eligible.

The immigration judge denied his request for administrative closure. Zelaya appealed to the Board of Immigration Appeals, and on January 23, 2020, the Board dismissed Zelaya's appeal and ordered voluntary deportation. The Board concluded that administrative closure was not warranted. The Board cited the Attorney General's opinion in *Matter of Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018), which sharply restricted the ability of immigration judges and the Board itself to close cases administratively. The Board then said it was basing its decision in part on the Department of Homeland Security's opposition to closure and in part on the Department's stated intention not to exercise its discretion to "repaper" the case. The Board's opinion did not indicate that it applied the factors set out in its own precedents of *Avetisyan* and *W-Y-U*.

Zelaya has petitioned for review of the Board's decision. We exercise jurisdiction under 8 U.S.C. § 1252(a)(2)(D), which permits judicial review of questions of law, and 8 U.S.C. § 1252(a)(1), which permits judicial review of final orders of removal. See *Vahora v. Holder*, 626 F.3d 907, 919 (7th Cir. 2010) ("In sum, the decision to deny administrative closure … is within our cognizance.").

We review an immigration court's decision to deny administrative closure for abuse of discretion. *Vahora*, 626 F.3d at 919 (when reviewing a decision to deny administrative closure, "[w]e apply ordinary judicial standards to determine whether the [immigration judge] abused his discretion…."). We will uphold the Board's decision unless it "was made without a rational explanation, inexplicably departed from

established policies, or rested on an impermissible basis…." *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014), quoting *Victor v. Holder*, 616 F.3d 705, 708 (7th Cir. 2010).

II. *Administrative Closure and "Repapering"*

Before 1996, a person in deportation proceedings was eligible for a defense called "suspension of deportation" if she met certain criteria in § 244 of the Immigration & Nationality Act. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and the Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA) tightened eligibility for suspension of deportation, which the new law designated "cancellation of removal." 8 U.S.C. § 1229b(b). By authorizing the Attorney General to close deportation proceedings administratively to allow for repapering into removal proceedings, the new legislation created a safety valve allowing people who would have been eligible for suspension of deportation under the old law to apply eventually for cancellation of removal. 8 U.S.C. § 1101 note; 110 Stat. 3009–626, IIRIRA § 309(c)(3).

A person may be eligible for cancellation of removal if she: (1) has been physically present in the United States for a continuous period of not less than ten years preceding the application; (2) has been a person of good moral character during such period; (3) has not been convicted of specified offenses; and (4) establishes that removal would result in exceptional and extremely unusual hardship to her spouse, parent, or child who is a citizen of the United States or a legal permanent resident. 8 U.S.C. § 1229b(b)(1).

III. *Discretionary Considerations for Administrative Closure*

Zelaya offers two distinct arguments for reversing the Board's decision affirming the denial of administrative closure. We reject the first but agree with the second.

His first argument is that a grant of administrative closure is mandatory under the *Accardi* doctrine of administrative law. See *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (holding that Board of Immigration Appeals was required to follow its own regulations in deciding whether to suspend deportation). *Accardi* and its progeny teach generally that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion. Zelaya cites several internal memoranda on administrative closure that were issued long before the Attorney General's 2018 directive in *Castro-Tum* that nearly eliminated immigration judges' ability to close cases administratively.

Zelaya did not raise this argument in the Board proceedings, but it fails on the merits in any event. The *Accardi* doctrine generally does not apply to an agency's internal memoranda, at least those that are neither designed to protect individual rights nor intended to have the force of law. See, e.g., *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (declining to give legal effect to agency's internal manual that had not been promulgated under Administrative Procedure Act); *Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991) (enforcing INS regulation and discussing application of *Accardi* doctrine to less formal policies designed to protect individual rights); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018) (discussing scope of *Accardi* in immigration context: "agencies can be held

accountable to their own codifications of procedures and policies").

The internal memoranda Zelaya relies upon do not reach that level of formality or substantive importance in protecting individual rights. Cf. *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959) (applying *Accardi* to enforce Department of Interior regulations); *Service v. Dulles*, 354 U.S. 363, 387–89 (1957) (enforcing Department of State regulations); *Caldwell v. Miller*, 790 F.2d 589, 610 (7th Cir. 1986) (enforcing Bureau of Prisons regulations); *VanderMolen v. Stetson*, 571 F.2d 617, 624 (D.C. Cir. 1977) (enforcing Air Force regulation). We are not persuaded that the *Accardi* doctrine required the immigration judge and Board to grant Zelaya's request for administrative closure.

Zelaya's second argument is that the Board abused its discretion by making an error of law in his case, by following the Attorney General's directive in *Castro-Tum* and failing to apply the *Avetisyan* and *W-Y-U* factors. In *Meza Morales*, we held that the Attorney General's directive was contrary to law and that immigration judges and the Board of Immigration Appeals are "not precluded from administratively closing cases when appropriate." 973 F.3d at 667.

Explaining this argument requires a bit of history on administrative closure of deportation and removal proceedings. While the subject is arcane, it can have enormous practical importance for a person like Zelaya, who is enmeshed in our complex system of immigration, simultaneously engaged in a removal proceeding and a parallel proceeding seeking lawful status.[1]

---

[1] According to the Sixth Circuit, more than 400,000 deportation or removal cases have been closed administratively, and more than 350,000 of

Before 2018, Board of Immigration Appeals precedent told immigration judges to decide requests for administrative closure based on factors identified in *Matter of Avetisyan*, 25 I&N Dec. 688 (BIA 2012), and *Matter of W-Y-U*, 27 I&N Dec. 17 (BIA 2017). *Avetisyan* listed six factors: "(1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings … when the case is recalendared before the Immigration Judge or the appeal is reinstated before the Board." 25 I&N Dec. at 696. *Matter of W-Y-U* followed and clarified *Avetisyan*, teaching that "the primary consideration for an Immigration Judge in determining whether to administratively close or recalendar proceedings is whether the party opposing administrative closure has provided a persuasive reason for the case to proceed and be resolved on the merits." 27 I&N Dec. at 20.

Thus, before *Castro-Tum*, the state of law and practice was that an immigration judge had the authority and discretion to grant administrative closure guided by these factors established in the Board's precedential decisions. In 2018, however, the Attorney General's *Castro-Tum* directive said that immigration judges did not have such authority, regardless of the reasons offered for administrative closure: "immigration judges and the Board do not have the general authority to suspend indefinitely immigration proceedings by administrative

those had not been reopened as of October 2018. *Hernandez-Serrano v. Barr*, 981 F.3d 459, 461 (6th Cir. 2020).

closure." 27 I&N Dec. at 272. *Castro-Tum* clearly overruled *Avetisyan* and *W-Y-U* to the extent they recognized and then guided immigration judges' discretionary power to close administratively.

The Board in Zelaya's case understandably cited the Attorney General's new directive and then affirmed the immigration judge's denial of administrative closure without applying the factors from *Avetisyan* or *W-Y-U*. As noted, however, we held in *Meza Morales* that *Castro-Tum* was contrary to law. We will not repeat our reasoning here, but we concluded that immigration regulations plainly grant immigration judges broad authority and discretion to take "any action … that is appropriate and necessary for the disposition of [the cases before them]," that "'appropriate and necessary' is a capacious phrase," and that administrative closure is clearly an "action" that immigration judges may take. 973 F.3d at 665, quoting 8 C.F.R. § 1003.10(b).

Our decision in *Meza Morales* effectively reinstated the prior Board precedent on the *Avetisyan* and *W-Y-U* factors, and neither the immigration judge nor the Board considered those factors here. It is not clear from the Board's brief opinion how much it relied upon the directive of *Castro-Tum* and how much it relied upon the Department of Homeland Security's opposition to closure and stated intention not to repaper. We need not answer that question to decide this petition. To the extent the Board relied on *Castro-Tum*, it acted contrary to law, at least in this circuit. To the extent the Department's position was decisive, it is not the Department's opposition but its *basis* that is important. That basis also remains only one of several *Avetisyan* and *W-Y-U* factors that should be considered in deciding whether to grant administrative closure. How to weigh

all of those factors in a particular case is a job for the immigration judge and the Board, not for this court or the Department of Homeland Security. Zelaya is entitled to have his request for administrative closure considered as a proper exercise of discretion under law, including Board precedents and the factors set forth in *Avetisyan* and *W-Y-U*. That has not happened yet in Zelaya's case. The petition for review is GRANTED, and the case is REMANDED to the Board for further proceedings consistent with this opinion.